EARL H. PRINCE

*v.*

GEORGE A. DUPUY.

*Filed at Ottawa November 9, 1896.*

1. PRINCIPAL AND AGENT—*what will disaffirm conveyance to agent improperly obtained.* A principal who conveys to a third person property previously conveyed to his agent, because of the latter's concealment of material facts, disaffirms the sale and conveyance to the agent.

2. SAME—*what is a violation of agent's duty to his principal.* An agent who receives from his principal a deed to be delivered to a third person who has offered to purchase the principal's lands, but withholds the deed because of information which he has of the value of the land which he knows his principal does not have, violates his duty to the latter in obtaining a conveyance to himself at the same price the third person was to pay.

3. SAME—*agent must advise principal of all advantages.* It is the duty of an agent to make use of his information for the benefit of his principal, and not for his own, and to advise his principal as fully as he knows, to enable the latter to deal with his property to his own advantage.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

The appellee, Dupuy, filed his bill in equity against appellant, Prince, to set aside and cancel as a cloud upon his title to a certain lot in Hinckley's subdivision in Chicago, a certain deed of conveyance made to Prince by Luther B. Johnson. The trial court decreed as prayed in the bill, and Prince appealed.

Both parties claim title from Johnson. The lot had been conveyed many years before to Johnson's father, and Johnson derived his title by descent, as the only heir. The property had been sold many times for unpaid taxes and assessments, and was incumbered by four or more tax titles, and for taxes for many years. Johnson had very little, if any, knowledge as to the situation or value of the lot or as to whether or not he had any valuable interest in it. Johnson lived in the State of Vermont, Prince and Dupuy in Chicago. In May, 1892, Dupuy wrote to Johnson, to the effect that if he wished to sell his remaining interest in the property he would buy for a small sum, and later, early in the month of June, after some correspondence, wrote offering him $50 for a conveyance, but received no reply. On June 29 Dupuy again wrote to Johnson that he expected to leave Chicago either on July 9 or 16, and requested an early reply, and enclosed a draft of a deed of the property, requesting that it be executed and returned to him if Johnson decided to accept his proposition, and that he did not care to purchase unless he did so before his departure. In the interval, upon receiving Dupuy's proposition to pay $50 for his interest, and on June 8, 1892, Johnson wrote to Prince, who was then engaged in the business of a real estate agent in Chicago, that he had received an offer of $50 for his interest in the property; that whatever could be realized from it would go to his father's creditors, but he was anxious to receive as much as possible, and further wrote: "I should like to find out whether the offer I mentioned is the equivalent of the value of the interest. Would you be willing to look the matter up, with the understanding that if you are the means of bringing a greater price than $50 you should be paid, otherwise not? I am directed to you by Mr. Plumley, the administrator, who says it would not be advisable to incur charges in looking up this matter unless there was a strong probability of increased returns. If you are willing to under-

take the matter I will give you more definite outline of the case." Three days later Prince replied by letter to Johnson that upon receiving a description of the property he would look it up and see what there was in it and let Johnson know, and asked for a plat, and particulars of his father's death, his age, etc. Under date of June 17 Johnson replied to Prince that he had no plat and could not accurately describe the property, but that it fronted on West Center avenue, near Fifty-first street; that Albert D. Bingham and wife conveyed the lot to his father, James N. Johnson, by warranty deed recorded in December, 1873, (information that Dupuy had given him,) and further wrote: "If you require the actual location of the lot by data giving range, section, etc., I can probably furnish it by corresponding with the prospective purchaser. Father died February 1, 1890. I am twenty-two years old; no brothers or sisters. My opinion is there is some value to my interest in this property, else the party making me the offer would not do so. Doubtless he has not appraised its value in my favor, either. Please give the matter early attention, and oblige." Prince testified that he was unable to give the matter special attention until about June 29, on account of the sickness and death of his partner, but on the last named date he wrote to Johnson that he was unable to locate the property from the description given, and that if Johnson could not give him accurate description he would better refer him to the party proposing to purchase it, so that he could locate it and look it up and find out about it. On July 2 Johnson wrote Prince as follows:

"Yours received. It is now too late to do anything about looking up the lot's title, location or value. Enclosed find a quit-claim deed signed, ready for delivery to the purchaser, G. A. Dupuy, R. 41, City Hall, Chicago. Please collect the $50, hand over the deed, and remit me the proceeds after deducting your charges. As Mr. Dupuy leaves the city in a day or two, I beg you to act upon the matter at once."

And on July 11 Prince wrote Johnson in reply, as follows:

"Your letter of July 2 is at hand and contents noted. It came at a time when I was very busy, as my partner, E. Y. Foote, had just died, so your business has been neglected. I am going to gamble a little. I think if it is worth $50 to Mr. Dupuy it ought to be worth nearly that to me, and I do not care to have you lose anything by my negligence, therefore I inclose you a draft for $50. Yourself and wife will please sign the inclosed deed and have it acknowledged, and please have a certificate of the clerk of the court of the genuineness of the notary's signature attached to the deed. As soon as I get time I will look the matter up and find out whether there is anything in it for me or not. I think the party having the tax title will certainly be willing to give me $50 to get a clean title. If you will do as I requested, you will greatly oblige me."

Johnson supposed that Dupuy had left the city and that the trade with him had fallen through, and accepted the $50 from Prince, and executed, acknowledged and sent to him a deed as requested. He afterward learned that Dupuy had not left the city at that time, but that Prince had withheld from Dupuy the fact that he had Johnson's deed for delivery to him. Johnson thereupon demanded a re-conveyance from Prince, and offered to return the $50, but Prince refused to comply with the demand. The evidence also tended to show that Dupuy would have paid a larger amount for the property rather than lose it, and that Prince knew that fact but concealed it from Johnson. Afterward, in September, 1892, Johnson executed, acknowledged and delivered to Dupuy a quit-claim deed for the property. Linscott, who at the time of the transaction was a partner of Prince, testified that Prince spoke to him about the Johnson lot; that he went with Prince to the county building in Chicago and showed him a plat of the subdivision, and looked up with him the names of the parties who held tax deeds; that this occurred the last of May or the first of June; that before he made the offer to purchase to Johnson, he, Prince, went and examined the property and said it was nice

property and worth three or four thousand dollars, and that he should try and get it himself, and that before replying to Johnson and making him a proposition he would ascertain, if he could, how much it would cost to buy the tax certificates. This is in part denied by Prince. He states that the conversation he had with Linscott was after he sent the draft for the deed to himself.

HILLIS & McCOY, and BROWN & SNYDER, for appellant:

As the agent of Johnson, Prince was not liable to any third person for any negligence or nonfeasance in the discharge of his duty. 1 Parsons on Contracts, 66; Story on Agency, sec. 308; *Henshaw* v. *Noble*, 7 Ohio St. 231; *Merriman* v. *David*, 31 Ill. 404.

Where the facts are fully disclosed and the agent acts in good faith, the principal may deal with the agent as with any other person. Mechem on Agency, sec. 466; *Uhlich* v. *Muhlke*, 61 Ill. 499.

Where the facts are disclosed the agent may purchase. (Mechem on Agency, sec. 461, and cases cited.) But if the agent be employed for an entirely collateral matter, no trust is created which would be violated if the agent purchases the land himself. Mechem on Agency, sec. 460; *Collins* v. *Sullivan*, 135 Mass. 461.

If the agent relinquish his agency and then buys, it is valid, unless actual fraud be shown. Mechem on Agency, sec. 460; *Bank* v. *Bissell*, 2 McCrary, 73.

The fraud must be established by the proofs. 1 Story's Eq. Jur. sec. 190.

If Prince deceived Johnson it must have been to the latter's injury. 1 Story's Eq. Jur. sec. 203.

Whether Prince was guilty of fraud toward Johnson is a question of fact, and should be decided according to the weight of the evidence. *Rackley* v. *Rackley*, 151 Ill. 332; *Coari* v. *Olsen*, 91 id. 277; *Johnson* v. *Johnson*, 125 id. 514.

JAMES L. CLARK, for appellee:

Dupuy, as grantee of Johnson, has all the rights he had in the first instance, together with all the rights which Johnson had prior to his conveyance to Dupuy. *Whitney* v. *Roberts,* 22 Ill. 383; *Smith* v. *Wright,* 49 id. 408; Chitty on Contracts, 527; *Choteau* v. *Jones,* 11 Ill. 300; *Norton* v. *Tuttle,* 60 id. 136; 1 Perry on Trusts, sec. 169; *Lantry* v. *Lantry,* 51 Ill. 463; *Weaver* v. *Fisher,* 110 id. 154; *Davis* v. *Hamlin,* 108 id. 49.

Mr. JUSTICE CARTER delivered the opinion of the court:

The evidence in this case, when fully and fairly considered, shows that while appellant was acting as the agent of Johnson, the owner, charged with the duty which he had undertaken for Johnson of investigating the location, value and condition of the title of the lot in question,—matters concerning which Johnson, who lived in a distant State, knew but little,—he, appellant, concealed from Johnson information in the premises which he had obtained in the course of his employment and which would have been of value to Johnson before he parted with his title, and instead of reporting to Johnson information which he had tending to show that Johnson's interest was of greater value than $50, (the amount which Dupuy had offered,) and that Dupuy would increase the amount of his offer, took advantage of the knowledge he had so obtained and procured from Johnson a conveyance to himself for the same consideration. In other words, the agent took advantage of the fiduciary relation which he sustained to his principal to procure for himself the subject matter of the agency. This the law will not tolerate. This principle is too familiar to require elaboration or citation of authority in its support. After learning the facts, Johnson demanded of Prince a re-conveyance and offered to return the consideration received. Prince refused. Johnson then conveyed the property to Dupuy, the appellee, who filed the bill. It is conceded that the

law is that appellee has the same right to maintain suit
to set aside the deed to Prince that Johnson had before
he conveyed to Dupuy.   We have no doubt that Johnson
had such right, and that his conveyance of the property
to Dupuy operated as a disaffirmance of the sale and con-
veyance to Prince, and that Dupuy's bill was properly
brought.   (*Norton* v. *Tuttle*, 60 Ill. 130; 1 Perry on Trusts,
sec. 169; *Lantry* v. *Lantry*, 51 Ill. 458; *Weaver* v. *Fisher*, 110
id. 146; *Davis* v. *Hamlin*, 108 id. 39; *Whitney* v. *Roberts*, 22
id. 381; *Smith* v. *Wright*, 49 id. 403; Chitty on Contracts,
527; *Choteau* v. *Jones*, 11 Ill. 300.)   No other point of im-
portance is made in the case.

Counsel for appellant endeavor, in elaborate argu-
ments, to make it appear that he violated no duty to his
principal in obtaining the conveyance to himself at the
same price Dupuy was to pay, after Johnson had con-
cluded to sell to Dupuy and had executed and sent to
him, Prince, the deed, with instructions to deliver to Du-
puy and collect the consideration.   In this we cannot
agree with counsel.   Johnson having received no infor-
mation from Prince, his agent, and fearing that by delay
he would lose the sale to Dupuy, made the deed and sent
it to his agent with instructions to deliver, but did not
notify Dupuy or otherwise accept his offer.   Let it be
conceded, as contended by counsel, that this was not a
delivery of the deed to Dupuy or to a third person for
his benefit,—that in the hands of Prince, Johnson's agent,
it was still in the hands of Johnson; still, if Prince with-
held the deed from Dupuy because of information which
he had of the lot and its value, and which he knew John-
son, his principal, did not have, his duty was to make
use of it for Johnson's, and not for his own, benefit,—
to advise Johnson as fully as he knew, and in the light
of such information enable Johnson to still deal with the
property to his own best advantage.

We have not thought it necessary to consider whether,
from the evidence, Prince owed any duty to Dupuy in

respect to delivering him the deed, as instructed by Johnson. The bill is framed on the other theory,—the theory above mentioned,—and is, we think, fully sustained by the evidence. It is conceded that if the decree is proper on this branch of the case it is also proper so far as the tax titles are concerned.

We are satisfied that the case was correctly decided by the learned chancellor of the circuit court, and the decree will be affirmed.                                    *Decree affirmed.*