OSCAR A. LEWIS

*v.*

MARY T. McGRATH *et al.*

| 191 | 401 |
|-----|-----|
| 205 | ²270 |
| 191 | 401 |
| 212 | 363 |

*Opinion filed June 19, 1901—Rehearing denied October 10, 1901.*

1. CONVEYANCES—*conveyance is binding upon grantor though in fraud of creditors.* A conveyance of property from husband and wife to a third person, and by him to the wife, in order that she and her children might own the property and hold the same against the husband's creditors, is binding and valid as to the husband and those claiming under him, although it may have been fraudulent as to his creditors.

2. SAME—*conveyance from husband and wife presumed an advancement.* Where the husband causes property to be conveyed to his wife the presumption is that it was intended as a gift or advancement, and the burden is upon the husband to show the contrary.

3. SAME—*when it is proper to require parties claiming under deed to prove fairness of transaction.* Where a voluntary conveyance was made but a few days before the grantor's death, at a time when she was very weak, both physically and mentally, and when, by reason of the confidential relation between herself and her husband, she could easily have been prevailed upon to make the deed, it is not a harsh rule to require parties claiming under such deed to show that the transaction was a fair one and entered into by the grantor understandingly.

4. EVIDENCE—*what sufficient to overcome a notary's certificate of acknowledgment.* A notary's certificate to a voluntary conveyance made by a married woman a few days before her death is overcome by the uncontradicted testimony of three witnesses, two of whom were disinterested, that one or the other of them was in constant attendance upon the sick woman from a time prior to the alleged acknowledgment up to her death, and that during such time neither the notary before whom the deed purported to be acknowledged, nor any other person, presented any paper to the sick woman for signature or acknowledgment.

APPEAL from the Circuit Court of Cook county; the Hon. HARRY HIGBEE, Judge, presiding.

This is a bill in chancery filed on May 26, 1892, in the circuit court of Cook county, by Mary T. McGrath, Nellie McGrath Hallinan, John T. McGrath, Katie McGrath Hynes, Thomas E. McGrath and Anastasia McGrath, as heirs-at-law of Mary McGrath, deceased, against John

191—26

Waddington, Jr., and James J. McGrath, their father, to cancel two deeds purporting to convey the title to lots 24, 25 and 26, in block No. 5, in David S. Lee's addition to Chicago, Cook county, Illinois,—one of said deeds bearing date November 13, 1880, and purporting to have been made and executed by said Mary McGrath and James J. McGrath, her husband, to one John Waddington, Jr., and which was filed for record in the recorder's office of Cook county on the second day of April, 1881; the other of said deeds bearing date March 29, 1881, and purporting to have been made and executed by said John Waddington, Jr., and Mattie E. Waddington, his wife, to James J. McGrath, which was filed for record in the recorder's office of Cook county on the second day of April, 1881. John Waddington, Jr., having failed to answer said bill, was defaulted. On the third day of January, 1898, James J. McGrath and Mary McGrath, his wife by a subsequent marriage, conveyed said premises to Oscar A. Lewis by deed, which was filed for record in the recorder's office of Cook county February 14, 1898. On the 24th day of November, 1899, said James J. McGrath died, and subsequently thereto said Mary McGrath, Mary McGrath as administratrix of James J. McGrath, deceased, and Oscar A. Lewis, were made parties defendant to said bill of complaint, and adopted as their answers to said bill the answer of James J. McGrath theretofore filed thereto. A replication having been filed to said answer, the cause was referred to a master in chancery to take proofs and report his conclusions as to the law and the facts. The master, after having overruled the objections of Oscar A. Lewis to his report, found in favor of the complainants, which report was approved and confirmed by the court after overruling said objections, which had been renewed as exceptions to said report, and a decree was entered granting the relief prayed for and canceling said deeds as clouds upon the title of complainants, and finding that Oscar A. Lewis had been in possession of said

premises since the third day of January, 1898, without right, and that he should account to the complainants for such use and occupation, the rights of complainants to such accounting being reserved for a further reference to the master, from which decree Oscar A. Lewis has prosecuted this appeal.

The master in chancery found the facts substantially as follows: On May 1, 1872, Mary Lee Stewart conveyed by deed to James J. McGrath said lots, which deed was filed for record in the recorder's office of Cook county on June 6, 1872. On January 6, 1876, said James J. McGrath and Mary McGrath, his wife, conveyed by deed to John F. Browne said lots, which deed was filed for record in the recorder's office of Cook county on April 7, 1876. On March 16, 1876, said John F. Browne conveyed by deed to Mary McGrath, the wife of James J. McGrath, said lots, which deed was filed for record in the recorder's office of Cook county on April 7, 1876. Said premises, prior to and at the time of the execution of said two last mentioned deeds, were occupied by the said James J. McGrath and Mary McGrath, and their children, as a homestead, and they continued so to occupy the same until the death of said Mary McGrath, which occurred on November 25, 1880. After the death of said Mary McGrath, for a number of years the said James J. McGrath and his children, the complainants, continued to occupy said premises as a homestead, after which the said James J. McGrath continued to make said premises his home until his death. Some time after the death of said Mary McGrath said James J. McGrath married one Belinda Kerwin, by whom he had a number of children. Thereafter the said Belinda Kerwin departed this life and the said James J. McGrath married Mary Lonergan, who survives him, and who on December 4, 1899, was appointed by the county court of Cook county administratrix of the estate of James J. McGrath, deceased, and duly qualified as such.

About the time when said premises were conveyed by the said James J. McGrath and wife to said Browne, and by said Browne to said Mary McGrath, the said James J. McGrath was in the distillery business, and was obliged to give a bond of $60,000 to the government, and the said Browne was one of the sureties on that bond. Being unable to qualify as such surety, said McGrath and wife conveyed said premises to Browne for the purpose of enabling him to qualify on the bond, and the deed of conveyance was received by Browne for that purpose. No consideration was paid for the conveyance by Browne, and it was made to Browne with the understanding that he would convey said premises, upon request, to Mary McGrath, wife of said James J. McGrath. About the time said bond was given and accepted there was trouble between McGrath and the government on the charge of defrauding the government out of the revenue on certain whiskies sold by him, when James J. McGrath suggested to Browne that said premises be conveyed to Mary McGrath, so they would be secure against any claim of the government, should suit be brought upon said bond. Thereupon, and in response to said suggestion, the said Browne executed and delivered said deed to said Mary McGrath. On August 30, 1878, said James J. McGrath filed his petition in bankruptcy in the United States District Court for the Northern District of Illinois. In said bankruptcy proceeding and with said petition James J. McGrath filed a schedule of all his debts and an inventory of all his property and assets, but in said inventory he did not inventory or mention the real estate in question.

About six weeks prior to her death the said Mary McGrath, who was suffering from a tumor, submitted to a surgical operation, she and her family being advised by their family physician that that was her only chance to recover. For a few days after the operation she appeared to be slightly better but soon became worse, and from the time of said operation until her death never

left her bed. During all the time intervening between said surgical operation and her death Mary McGrath was unable to rise from her bed, had little or no use of her hands, and for about two weeks prior to her death could retain no solid food and was unconscious a considerable portion of said time.

On March 1, 1881, James J. McGrath, in an affidavit made and filed in said bankruptcy proceedings, swore "that he has not willfully sworn falsely in his affidavit annexed to his petition, schedule or inventory filed in this case; * * * that he has not concealed any part of his estate or effects."

The answer of the defendant James J. McGrath, which was adopted by the defendants Mary McGrath and Oscar A. Lewis, in reference to the deed purporting to have been made and executed by the said Mary McGrath, deceased, and the said James J. McGrath, to said John Waddington, Jr., alleges as follows, viz.: "The said Mary McGrath and this defendant united in a quit-claim deed conveying the said premises to John Waddington, Jr., the said quit-claim deed being then delivered by said Mary McGrath to this defendant for the uses and purposes last herein mentioned, and being retained in the possession of this defendant until the same was filed by this defendant for record, along with a warranty deed executed by the said John Waddington, Jr., and Mattie E. Waddington, his wife, and dated on the 29th day of March, 1881, in and by which said deed the said John Waddington, Jr., and his said wife, in carrying out and executing the trust in behalf of this defendant, as hereinbefore set forth, conveyed the said premises to this defendant, and both of said deeds last mentioned were by this defendant on the second day of April, 1881, filed in the office of the recorder of said county for record, and were duly recorded; * * * that it is not true, and he therefore denies, that the said instrument purporting to be the deed of said Mary McGrath is not, nor was, the

deed of said Mary McGrath, and that she never made, executed nor delivered the same, and that the name of the said Mary McGrath affixed thereto is not the signature of said Mary McGrath, or that the said name was affixed thereto without her knowledge or consent, as alleged and set forth in said bill of complaint, and this defendant denies that there is any truth whatever in the said allegation."

PEASE & POLKY, (H. T. HELM, of counsel,) for appellant.

WILLIS SMITH, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the evidence is not sufficient to sustain the decree entered in this case. Upon a careful examination of this record we are of the opinion the findings of fact as made by the master and approved by the chancellor were fully justified by the evidence.

It is further contended that Mary McGrath held the title to said premises in trust for James J. McGrath, and that the deeds to Waddington and McGrath were made for the purpose of carrying out and executing such trust. We do not agree with such contention. The evidence shows that the title to these lots was in James J. McGrath; that he conveyed the same to John F. Browne; that John F. Browne, at his instance and request, conveyed the same to his wife, Mary McGrath. Browne testifies that such conveyance was made to Mary McGrath absolutely, and in order that she and her children might own this property and be able to hold the same against the creditors of James J. McGrath. While this conveyance may have been fraudulent as to the creditors of James J. McGrath, it was a binding and valid conveyance as against him and all persons claiming through or under him. Where the husband causes property to be conveyed

to his wife, the presumption is that the same was given to her as an advancement, and the burden of proof is upon him to establish the contrary. There is no such proof in this record. On the other hand, in the affidavit filed in the bankruptcy proceeding by James J. McGrath he stated he had no interest therein. In *Dorman* v. *Dorman*, 187 Ill. 154, we say (p. 158): "A resulting trust arises, by implication of law, from the acts of the parties. (*Donlin* v. *Bradley*, 119 Ill. 412; *VanBuskirk* v. *VanBuskirk*, 148 id. 9; 1 Perry on Trusts, sec. 134.) When the evidence shows the payment of the purchase money by one and the conveyance of the title thereby purchased to another, between parties who are strangers to each other, the law so construes these two facts as to make them constitute a resulting trust. (*Smith* v. *Smith*, 85 Ill. 189; *VanBuskirk* v. *VanBuskirk*, *supra*.) If the legal title is taken in the name of the wife such implication does not arise, it being the presumption that the same was intended as an advancement. (*Smith* v. *Smith*, 144 Ill. 299.) Such presumption may, however, be rebutted by parol testimony, if the same is clear and satisfactory. * * * The rule thus announced has been fully recognized by this court in numerous cases.—*Taylor* v. *Taylor*, 4 Gilm. 303; *Adlard* v. *Adlard*, 65 Ill. 212; *Wormley* v. *Wormley*, 98 id. 544; *Johnston* v. *Johnston*, 138 id. 385; *Smith* v. *Smith*, 144 id. 299; *Goelz* v. *Goelz*, 157 id. 33; *VanBuskirk* v. *VanBuskirk*, 148 id. 9; *Pool* v. *Phillips*, 167 id. 432." Our conclusion therefore is that Mary McGrath was the absolute owner of said property at the time of her death, unless she had transferred the same by a valid conveyance prior thereto.

It is next contended that the court erred in holding that the burden of proof was upon James J. McGrath, or the parties claiming title through him, to establish that the obtaining of the deed for said lots from said Mary McGrath was a fair transaction and free from any undue influence. We have already held that the lots were the property of Mary McGrath and that she did not hold

them in trust for her husband. It is admitted that the deed purporting to have been made by said Mary Mc-Grath was without consideration. It was made thirteen days before her death and at a time when she was in a very weak condition, both mentally and physically, and when, by reason of the confidential relation which existed between her and her husband, she could have been readily prevailed upon by him to make such deed. We do not think, therefore, where a deed is obtained under such circumstances, the rule a harsh one which requires a person claiming title thereunder to be required to show that the transaction was a fair one and entered into by the grantor understandingly. (*Sands* v. *Sands,* 112 Ill. 225; *White* v. *Ross,* 160 id. 56; *Ross* v. *Payson,* id. 349; *Dorsey* v. *Wolcott,* 173 id. 539.) In *Sands* v. *Sands, supra,* we say (p. 232): "The rule is, where a person enfeebled in mind, by disease or old age, is so placed as to be likely to be subjected to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee."

We have considered this case thus far upon the theory that Mary McGrath actually signed said deed, but that the evidence failed to show she had sufficient mental capacity to execute the same or that the same was fairly obtained from her. Under the evidence in this record we are satisfied such deed was never signed and acknowledged by Mary McGrath. During the time that intervened between such surgical operation and the death of Mary McGrath, and at the time it is claimed said deed was executed, the complainant Mary T. McGrath, together with her cousin, Mary Kelley, and a Mrs. Coleman, attended upon said Mary McGrath, with some assistance occasionally from some of the neighbors, but either the said Mary T. McGrath, the said Mary Kelley or Mrs. Coleman was in the room with said Mary McGrath all

the time, as they all testified positively, and that neither
C. C. Gilmore, the said notary public before whom said
deed purported to be acknowledged, or anyone else, ever
presented to Mary McGrath any deed or other paper for
her signature or acknowledgment during that period,
and that no such person as Gilmore ever entered her room
during that time. This testimony is not contradicted, and
two of the witnesses are disinterested parties. John F.
McGrath testifies he had a conversation with his brother,
James J. McGrath, in the winter after the death of Mary
McGrath, in which he asked him if he would have to go
into court about his wife's property; that James said,
"It is a slow way and I will get out of it if I can;" that
he had another conversation with him in the following
spring, when he asked him what he ever did about the
property. He said: "I fixed the whole thing up. It is all
on record. There is nobody to ever question it, only the
children, and it belongs to them anyway. They will never
bother. We will get out of great costs." We think this
evidence sufficient to overcome the notary's certificate.
*Kerr* v. *Russell,* 69 Ill. 666; *Lowell* v. *Wren,* 80. id. 238; *Mc-
Dowell* v. *Stewart,* 83 id. 538; *Griffin* v. *Griffin,* 125 id. 430.

We do not agree with the contention of the appellant
that the plaintiffs have been guilty of such *laches* in either
the commencement or prosecution of this suit as to bar
them from relief in this case. The evidence shows that
the complainant Mary T. McGrath was about eighteen
years of age at the time of her mother's death. She and
the other complainants, who were minors, continued to
live with James J. McGrath upon the premises for many
years. Their relations at that time were friendly and
confidential. They did not discover the fact that James
J. McGrath claimed to own this property until many
years thereafter and at about the time the youngest of
the children became of age. Upon making such discov-
ery they immediately filed their bill to set aside and can-
cel said deeds. While there has been some delay in the

prosecution of the suit it has never been abandoned, but, so far as we are able to discover from this record, from its inception up to the time a decree was entered in the court below was carried on in the utmost good faith.

The appellant, Oscar A. Lewis, took whatever title he has *pendente lite,* and acquired no better title to said lots than was had by James J. McGrath, his grantor. The only evidence introduced by him was a deed for said lots executed by James J. McGrath and wife January 3, 1898.

The decree of the circuit court will be affirmed.

*Decree affirmed.*