### W. P. WALKER & CO. v. WALBRIDGE.

(Circuit Court of Appeals, Fifth Circuit. March 14, 1905.)

#### No. 1,340.

FRAUDULENT REPRESENTATIONS—ACTION FOR DECEIT—MEASURE OF DAMAGES.

A declaration in an action of deceit which alleges that plaintiffs purchased from defendant a ranch for the lump sum of $20,000 in reliance upon defendant's representations, which were supported by an abstract of title produced by him, and the certificate of a county clerk that the ranch contained 43 sections of land, including 13 sections of state land held under a long-term lease, which representation was false, in that defendant had no lease or other title to 11 of such 13 sections, and that plaintiff obtained none, states a cause of action for the recovery of the value of the leasehold interest in said 11 sections, had defendant held title thereto as represented.

Shelby, Circuit Judge, dissenting on the ground that the measure of damages recoverable for deceit inducing a purchase of property is the amount of plaintiff's loss by the purchase, and that a declaration does not state a cause of action for such recovery unless it alleges that the property obtained was not worth the price paid.

In Error to the Circuit Court of the United States for the Western District of Texas.

W. M. Walton, Geo. S. Walton, A. B. Storey, and P. J. Greenwood, for plaintiffs in error.

T. W. Gregory and R. L. Batts, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The declaration in this case avers, substantially: That the plaintiffs and the defendant about July 1, 1901, entered into negotiations for the purchase by the plaintiffs of a ranch owned by the defendant, known as the "Old Murphy Ranch," situated in Jeff Davis, Presidio, and Brewster counties, Tex. That the defendant at that time represented to the plaintiffs that the ranch con-

tained between 41 and 43 sections of land, held by the defendant under various titles; some of them being by fee-simple title, other parts by tax title, and still other parts as leased lands. That the plaintiff G. C. Walker and the defendant at the time of entering on this negotiation made a partial personal examination of the ranch, during which examination Walker stated to the defendant that it would be fruitless for him (Walker) to attempt to ascertain the location and size of the ranch from a personal examination, as he was a stranger in the country, and might be shown over only a small portion of the land, and not know but that he had seen all of it; and, upon inquiry of the plaintiffs, the defendant again assured the plaintiffs that the ranch contained between 41 and 43 sections of land, of the kinds above described. An understanding was finally reached, by the terms of which the plaintiffs agreed to purchase a ranch of the size and character mentioned by the defendant for the lump sum of $20,000 for the land, and so much per head for certain cattle thereon. No difference in price was fixed, agreed on, or understood in regard to the several different kinds of land constituting the ranch; but the ranch, as a whole, consisting of from 41 to 43 sections of the various kinds of land above described, was valued at, and sold by the defendant to the plaintiffs for the agreed price of, twenty thousand dollars, which sum was paid to the defendant. On July 6, 1901, a written agreement between plaintiff G. C. Walker and the defendant in regard to the sale of the ranch was signed. This written agreement included the terms and price of the land, but did not specify the quantity of land which the ranch contained, because of the request of the defendant that this item should be omitted, and the obligation upon his part to furnish the necessary abstracts of title; and although the plaintiff at the time requested that the written contract should show the number of acres of land contained in the ranch, and to be transferred by the contract of sale, upon the repeated assurances of the defendant that the ranch contained between 41 and 43 sections of land, and that defendant would furnish to plaintiffs the leases, title papers, and abstracts showing the amount of land in the ranch, the specification as to the number of acres in same was omitted from the written contract; and, relying upon the assurances of the defendant, plaintiffs waived the insertion in the contract of the quantity of land contained in the ranch, the title to which was to pass to plaintiffs by the sale. That at no time prior to the consummation of the sale did plaintiffs know the quantity of land in the ranch, except as the same was represented by the defendant, but that they relied implicitly on the representations and statements of the defendant. That, as an inducement to the plaintiffs to purchase the ranch, defendant represented to them that the ranch contained, among other lands, as many as 11 or 13 sections held by the defendant under a 10-year lease from the state, which had yet more than 9 years to run; that the 10-year leases were very valuable, as the state had lowered the lease period, and no more 10-year leases could be secured; that the 10-year lease land was situated in Presidio county, and was included in the ranch; that the defendant would furnish abstracts showing therein everything concerning the lands constituting the ranch, including that land held under the leases; that these representations made by the defendant in regard to the

quantity of 10-year lease lands included in the ranch were confirmed in defendant's presence by the defendant's agent, Stewart, by showing plaintiffs a list including 13 sections of land in Presidio county held, according to that list, under a 10-year lease from November 2, 1900. That these representations were made by the defendant to the plaintiffs prior to the execution of the contract of sale. The plaintiffs believed the same to be true, and, relying implicitly upon the truth of the same, were induced to buy the ranch because of these representations. That the defendant did furnish and deliver to the plaintiffs abstracts of title to all the lands represented by the defendant to be in the ranch. That, according to the abstract so furnished plaintiffs by the defendant, the ranch contained 43.3 sections of land, among which were included 13 sections of land lying in Presidio county, purporting to be held by the defendant from the state under 10-year lease contracts, dating from November 2, 1900. That, in addition to the abstracts, defendant also furnished plaintiffs a certificate from D. Alarcon, county clerk of Presidio county, showing the leases to have been made as claimed by the defendant, and as shown by the abstracts, only in that 2 of the sections were by the certificate shown to be in one block, and the remaining 11 in another block, whereas in the abstracts all 13 were shown to be in one block. That, believing the representations made by the defendant to the plaintiffs as to the number of sections of land in the ranch to be true, and believing the abstracts furnished by the defendant to the plaintiffs to be true and correct, and relying upon the truth and correctness of the representations, abstracts, and statements, the plaintiffs did on October 5, 1901, enter into a contract of purchase of the ranch, and paid to the defendant the agreed price, and received the title papers, abstracts, etc., and that thereupon the defendant reiterated his assurance to the plaintiffs that the ranch was as defendant had represented it to be, and plaintiffs went into immediate possession of the ranch. That on January 1, 1902, for the purpose of paying the amount due the state on the leased lands represented by the defendant to be included in the ranch, and so shown to be by the abstracts, etc., furnished the plaintiffs by the defendant, and which the plaintiffs relied upon as true, and verily believed to be true, the plaintiffs forwarded to the State Treasurer the amount so due the state, including the amount due on the 13 sections lying in Presidio county, held under the 10-year lease contracts. That thereupon plaintiffs discovered for the first time that the ranch, instead of containing the 13 sections of 10-year lease land, as represented by the defendant, contained only 2 sections of 10-year lease land. That plaintiffs immediately made full investigation, and discovered for the first time that the ranch contained less land than had been represented by the defendant and shown by the abstract furnished by the defendant, and that the shortage thus appearing for the first time was made up wholly of the 10-year lease lands represented by the defendant to be included in the ranch. That plaintiffs implicitly relied upon the statements and representations made by the defendant, and upon the abstracts of title and the clerk's certificate, as to the number of sections of land included in the ranch, and verily believed and thought that they were buying a ranch containing 43 sections of land. That they in fact bought and paid for 43

sections. That defendant conveyed to them only 32 sections, leaving a shortage of 11 sections, which shortage they did not discover until January 1, 1902. That the statements and representations and the abstract furnished by the defendant to the plaintiffs were wholly false and untrue. That the plaintiffs would never have purchased the ranch, had they known that the ranch contained only 32 sections, instead of 43 sections. That the plaintiffs were guilty of no negligence in accepting the statements and representations and abstracts as true. That the 11 sections of lease land represented by the defendant to be embraced in the ranch had at the time plaintiffs purchased a market value of 75 cents per acre, and that plaintiffs were damaged to the extent of their value by the false representations of the defendant. That in the purchase of the ranch the 11 sections of 10-year lease land represented by the defendant to be included in the ranch, and which the plaintiffs, relying on the representations of the defendant, believed were included in the ranch, were estimated by the plaintiffs and the defendant, because of the long time which the leases had yet to run, and because of the privilege of re-leasing the same from term to term, as of the same values as the fee-simple title lands, or at a value of 75 cents per acre, aggregating $5,280, for which sum the plaintiffs sue, which has never been paid, nor any part thereof, and is now justly due to the plaintiffs.

To these pleadings of the plaintiffs, on which the case went to trial, the defendant demurred generally that "the same is insufficient in law," and submitted special exceptions or demurrers to the effect that the petition sets forth oral negotiations which resulted in a contract reduced to writing, which superseded and replaced the oral negotiations; that the petition undertakes to set aside a part of the contract, without attempting to set aside the contract as a whole; that the alleged false representations are matters that plaintiffs could easily have informed themselves about, and were therefore chargeable with notice; that the matters averred, resting in parol, are absolutely void under the statute of frauds. These demurrers were sustained by the Circuit Court, and, plaintiffs electing to stand on their pleadings, their case was dismissed. This action of the Circuit Court is assigned as error, and we are of the opinion that the assignment is well taken. The plaintiffs allege that the defendant made positive and repeated representations that the ranch contained between 41 and 43 sections of land; that the titles to the various sections were of different kinds; that there were included in the ranch 13 sections of land situated in Presidio county, Tex., that defendant held under a 10-year lease contract with the state, which had yet more than 9 years to run; that defendant furnished abstracts and a certificate from the county clerk of Presido county substantiating his verbal statements. These were defendant's fact statements, as alleged by plaintiffs. Plaintiffs believed and relied upon them, and, so believing and relying upon them, bought the ranch; paying therefor on the basis of its including 43 sections. Subsequently, plaintiffs allege, when they attempted to pay the lease money to the state on the 13 10-year lease sections lying in Presidio county, they learned for the first time that defendant had never held a lease to 11 of these sections, and

that they were not included in the ranch. These are allegations as to the falsity of material representations. The intention of the defendant in this, as in all cases where it is not expressed, can be ascertained from the facts and circumstances surrounding the making of the false representations, the inducements by way of financial gain to him for making them, his actual or chargeable knowledge of their truth or falsity, and with the knowledge with which he must be charged as to the effect such statements would be likely to have upon plaintiffs, in inducing them to purchase the ranch. The false representations were material, and affected things of value. If true, there were 13 sections of 10-year lease land in Presidio county, valuable in themselves, and the lease on them could be, as represented by defendant, continued from term to term; making them, for pasture purposes and use, practically equivalent to the lands held by fee-simple title. The plaintiffs alleged that these statements did induce them to close the deal, that they believed and relied upon these statements implicitly, and that because of them the plaintiffs paid the defendant $20,000 for 43 sections of land represented by the defendant to be included in the ranch, and in reality received title to only 32 sections. That is to say, plaintiffs allege that they bought a body of land from the defendant, represented by him to contain between 26,240 acres and 27,520 acres, at an agreed lump-sum price, and that they received from him only 20,480 acres, or more than 7,000 acres less than they bought. The defendant could not be heard to say, and therefore it would be no defense for him to answer, that he was honestly mistaken in his statements to the plaintiffs in regard to the 10-year lease sections. "The charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive. The fraud consists in stating that the party knows the thing to exist, when he does not know it to exist; and, if he does not know it to exist, he must ordinarily be deemed to know that he does not. Forgetfulness of its existence after a former knowledge, or a mere belief of its existence, will not warrant or excuse a statement of actual knowledge." Chatham Furnace Co. v. Lawrence Moffatt, 147 Mass. 404, 18 N. E. 168, 9 Am. St. Rep. 727. In the case of Leicher v. Keeney (Mo. App.) 72 S. W. 145, we find it stated in the headnotes, which correctly represent the holding of the court: ·

"That a petition alleging that a vendor fraudulently represented that a tract of land had been surveyed, and found to contain 160 acres, for the purpose of inducing the vendee to purchase the same in gross, and injuring him, and that plaintiff relied on the representations, and seeking to recover damages therefor, states a cause of action. A vendee relying upon the vendor's fraudulent representations as to some specific fact affecting the value of the land may, on the discovery of the fraud, stand by the purchase, and sue for the fraud. Where a vendor's fraudulent representations relate to the quantity of the land sold, it is immaterial whether the sale is in gross or by the acre. The doctrine that a written contract is conclusively

presumed to merge all prior negotiations, so as to exclude parol evidence of the previous negotiations, does not apply to an action based on defendant's fraud in procuring the contract. The representations of a vendor that a tract of land contained 160 acres, while it contained over 18 acres less, is a material representation. A vendor sued by a vendee for fraudulent representations inducing the vendee to purchase a tract of land cannot defend by showing negligence on the vendee's part, when the negligence was caused by the vendor's own conduct."

To the same effect, substantially, is the case of Wright v. U. S. Mortgage Company of Scotland, decided by the Court of Civil Appeals of Texas. 42 S. W. 789. In the case of Labbe v. Corbett, 69 Tex. 509, 6 S. W. 808, the Texas Supreme Court adopts the rule asserted in the case of Railway Company v. Kisch, L. R. 2 H. L. 120, and states the rule as follows:

"When once it is established that there has been any fraudulent misrepresentation * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty' "—and makes this comment: "The rule is reasonable and well sustained by authority."

In the case of Scalf v. Tompkins, 61 Tex. 477, differing in its details from this, but involving substantially principles applicable here, that court held,-as shown by the headnote, that:

"After discovering the defect in the machinery, the defendant had a right to rescind in a reasonable time, and recover the purchase money, or sue for damages, and recoup them against the balance of the purchase money."

In the case of Blythe v. Speake, 23 Tex. 437, it seems to be assumed as settled law that:

· "A party defrauded in a contract has his choice of remedies. He may stand to the bargain, and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid. Campbell v. Fleming, 1 Ad. & E. 40."

In support of the action of the Circuit Court, the defendant cites the case of Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279, and the case of Sigafus v. Porter, 179 U. S. 122, 21 Sup. Ct. 34, 45 L. Ed. 113. In the first of these cases the plaintiff had purchased 4,000 shares of stock in a corporation, at $1.50 per share, for which he had paid the purchase price, $6,000, which he alleged he was induced to do by the false and fraudulent representations of the seller as to the value of the stock, which he averred was at the time of the purchase and of his pleading wholly worthless, and that, had the same been as represented by the defendant, it would have been worth at least $10 per share. The ruling in that case was that:

"The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor, if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. * * * If the jury believed from the evidence that the defend-

ant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct, but this liability did not include the expected fruits of an unrealized speculation."

In Sigafus v. Porter it is said:

"There are adjudged cases holding to the broad doctrine that in an action for deceit, based upon the fraudulent representations of a defendant as to the property sold by him, the plaintiff is entitled to recover, by way of damages, not simply the difference between its real, actual value at the time of purchase, and the amount paid for it by the seller, but the difference, however great, between such actual value and the value (in excess of what was paid) at which. the property could have been fairly valued if the seller's representations concerning it had been true. * * * We held in Smith v. Bolles that such was not the proper measure of damages; that case being like this, in that the plaintiff sought damages covering alleged losses of a speculative character. We adhere to the doctrine of Smith v. Bolles."

It seems clear to us that these cases do not apply to the case we have before us. It is not a supposed speculative profit. which this action seeks to recover, but the actual value, be it more or less, of a large quantity of land which the plaintiffs were induced to purchase and pay for, and were induced to believe they had actually received and entered into possession of, which in point of fact they never received, but which they might have received and would have received if the defendant had truly been the owner thereof, as he represented himself to be, and which at that time certainly had some substantial value, be it the amount claimed, or any lesser amount, as may easily be ascertained by a proper inquiry before the court and jury. They seek only to recover this excess cash payment made to the defendant on his false representation of physical facts.

The judgment of the Circuit Court is reversed, and the case is remanded to that court, with directions to award the plaintiff a new trial.

SHELBY, Circuit Judge (dissenting). This is an action for damages for deceit in the sale of real estate. The declaration shows that the plaintiffs purchased of the defendant a certain ranch for the lump sum of $20,000. It is averred that the defendant, to make such sale, represented that the ranch contained 43 sections, and that the plaintiffs subsequently ascertained that it only contained 32 sections—that there was a shortage of 11 sections. It is averred, in effect, that the 11 sections found not to be included in the ranch were worth not less than $7,000. The declaration contains no statement of the value of the 32 sections of land which were really included in the ranch, and embraced in the contract of purchase. The defendant demurred to the declaration as showing no cause of action, and the trial court sustained the demurrer. The plaintiffs declined to amend the petition, and it was dismissed.

A declaration in a suit for damages shows no cause of action unless it states facts which, if true, show that the plaintiff has been

damaged. It is averred that the plaintiffs have paid to the defendant the agreed price of $20,000, and have possession of the ranch. There is no offer to rescind the sale. The suit, in effect, ratifies and confirms the sale, and seeks damages for the deceit as to the quantity of the land. On proof of the deceit, the plaintiffs would be entitled to recover, on proper allegations, the amount of their loss. If the land which they received was worth $20,000, it seems clear that they have lost nothing. If it was worth more than $20,000, they have profited to the amount of the excess by the purchase. In Sigafus v. Porter, 179 U. S. 116, at page 123, 21 Sup. Ct. 34, at page 37, 45 L. Ed. 113, which was an action for deceit in the sale of real estate, the Supreme Court has laid down the rule for the measure of damages in such cases:

"The true measure of the damages suffered by one who is fraudulently induced to make a contract of sale, purchase, or exchange of property is the difference between the actual value of that which he parts with and the actual value of that which he receives under the contract."

The question in such case is, how much worse off are the plaintiffs than if they had not bought the land? If they had not bought the land, they would have in their pockets $20,000. It is clear that, to ascertain their loss, we must deduct from that amount the real value of the land they received. There is no other way in which to ascertain the loss which the plaintiffs have sustained by acting on the alleged representation of the defendant. That is the distinct rule established by the Supreme Court of the United States, by the English Court of Appeal, and by many state courts of last resort. Sigafus v. Porter, supra, and cases there cited; Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Peek v. Derry, 37 Ch. Div. 541, 591, 594.

Wilson v. New U. S. Cattle Ranch Company, 73 Fed. 994, 20 C. C. A. 241, decided by the Circuit Court of Appeals of the Eighth Circuit, was a suit involving the failure of the vendor to convey to the vendee the quantity of land which he had agreed to convey. In stating the proper rule of damages on that branch of the case, the court said:

"Upon an action for damages for the deceit and fraud which induced the purchase, the measure of damages is what the vendee has lost. It is the difference between that which he had before and that which he had after the contract of purchase was made."

Smith v. Bolles, supra, is cited as sustaining this rule. The same rule is also applied, in cases involving purchases of real estate in Atwater v. Whiteman (C. C.) 41 Fed. 427; Glaspell v. Northern Pac. R. Co. (C. C.) 43 Fed. 900; and Greenwood v. Pierce, 58 Tex. 130.

The declaration in this case contains no averment of fact that will enable the court to apply this rule. Every averment of fact which it contains may be true, and the plaintiffs, instead of being damaged, may have profited more than $10,000 by the purchase, for the land they hold under the purchase may be worth $30,000 instead of $20,000. Unless it is averred that the land which they received is

worth less than $20,000, there is certainly no averment of damage.

For these reasons, I think the Circuit Court ruled correctly in sustaining the demurrer, and that the judgment of the Circuit Court should be affirmed.