## PATTIZ v. SEMPLE et al.

(District Court, E. D. Illinois. April 24, 1926.)

No. 2274.

1. **Assignments ⊗⟳27—Right of action is assignable when incidental to property conveyed.**

While assignment of a mere right to file a bill in equity for fraud committed on the assignor is void, this rule does not apply to a case where such right is incidental to a subsisting substantial property which has been assigned.

2. **Assignments ⊗⟳27—As incident to conveyance of property, grantor may assign to grantee right to maintain suit to set aside fraudulent conveyance.**

As incidental to a conveyance of property, real or personal, the right may be assigned to the transferee to maintain a suit to set aside a fraudulent conveyance of the property, where the assignor might have maintained such suit.

3. **Assignments ⊗⟳27—Conveyance of property held to carry right to attack mortgage as fraudulent.**

Where defendants in good faith purchased property, a chattel mortgage on which had been adjudged fraudulent by decree of court, they received the incidental right, when the decree was subsequently set aside for want of jurisdiction, to attack the validity of the mortgage to the same extent as the original mortgagor might have done.

4. **Fraud ⊗⟳22(1)—Purchaser may rely on positive representations of seller, notwithstanding means of investigation are at hand.**

Where a representation is made by a seller in positive terms as to a fact actually or presumptively within his knowledge, and contains nothing so improbable as to cause doubt of its truth, the purchaser may rely upon it without investigation, though the means of investigation are within his reach.

5. **Fraud ⊗⟳22(1)—Maker of fraudulent representations cannot depend on ground of negligence of person defrauded.**

One making fraudulent representations to induce a sale will not be heard to say that the person defrauded was negligent, and was cheated through his own credulity.

6. **Fraud ⊗⟳31—Party defrauded may affirm contract and recover damages.**

One who by fraud has been induced to enter into a contract may affirm the contract and maintain an action to recover the damages, or may set up such damages by way of defense or recoupment or counterclaim.

In Equity. Suit by Max B. Pattiz against B. H. Semple and others. Decree for defendants.

See, also, 7 F.(2d) 618.

Kramer, Kramer & Campbell, of East St. Louis, Ill. (Bruce A. Campbell, of East St. Louis, Ill., of counsel), for plaintiff.

Dobbins & Dobbins, of Champaign, Ill., and Gunn, Penwell & Lindley, of Danville, Ill. (O. B. Dobbins, of Champaign, Ill., and H. F. Lindley, of Danville, Ill., of counsel), for defendants.

LINDLEY, District Judge. Plaintiff seeks to foreclose a chattel mortgage upon the furniture and fixtures of an hotel, purchased from him by one James C. Lewis, June 2, 1924, for $63,500, a part of which constitutes the indebtedness of over $11,000, represented by notes now sought to be enforced under the mortgage, executed at the time of the purchase. Later Lewis procured a decree in the circuit court of Illinois, adjudging the mortgage void because of fraud upon Pattiz' part in making the sale to Lewis. For want of jurisdiction, as this court has previously held, the said decree was void. Shortly after the decree was entered, and relying upon its fidelity, the present defendants purchased the property from Lewis, upon the assumption that the mortgage was void, free of the lien thereof. They now defend upon the ground that the original sale to Lewis, and consequently the mortgage, were fraudulent, that the purchase price and the mortgage were obtained by fraudulent representations upon plaintiff's part, that the damages resulting from said fraud exceed the amount due upon the notes and mortgage, and that they are therefore entitled to have the mortgage canceled. Plaintiff insists that Lewis could not, in selling to defendants, transfer to them such cause of action.

[1, 2] The assignment of a mere right to file a bill in equity for fraud committed on the assignor is void, as being against public policy and savoring of maintenance. But it seems that this rule, as established by the authorities, applies only to a case where the assignment does not carry anything which has itself a legal existence and value, independent of the right to sue for a fraud. It does not apply to a case where such right is merely incidental to a subsisting substantial property which has been assigned, and which is itself intrinsically susceptible of legal enforcement. In such a case the assignee is entitled to maintain an action to set aside a fraudulent conveyance of the property assigned, if his assignor might have done so. 5 C. J. 892, § 57; Smith v. Wright, 49 Ill. 403; Prince v. Dupuy, 45 N. E. 298, 163 Ill. 422; Traer v. Clews, 6 S. Ct. 155, 115 U. S. 539, 29 L. Ed. 471. In the case last cited, in a well-considered opinion, the Supreme Court said: "The rule is that an assignment of a mere right to file a bill in equity for fraud committed upon the assignor will be void, as contrary to public policy and savoring of maintenance. But, when property is conveyed, the fact that

the grantee may be compelled to bring a suit to enforce his right to the property, does not render the conveyance void."

The Supreme Court of Illinois in Warner v. Flack, 116 N. E. 197, 278 Ill. 303, 2 A. L. R. 423, said: "The text-writers generally state, and the cases have decided, the rule that a right of action for fraud cannot be assigned at law or in equity. The decisions were based on the ground, first, that such assignments are contrary to the policy of the law against maintenance or champerty; and, second, that they are contrary to the prohibition of the common law against the conveyance or transfer of property in the adverse possession of another. This prohibition no longer exists, and an absolute conveyance of property, real or personal, is not within the reason of the first ground of objection. Therefore many decisions of the courts are now found which, in the application of the rule, or as an exception to it, hold that a conveyance of property in the adverse possession of a third person under a voidable title carries with it the incidental right of the grantor to maintain a suit in equity to set aside the voidable title. * * * In this state the right to maintain a suit to set aside a title to land obtained fraudulently has been sustained in favor of either the heirs of the defrauded grantor or his assignee in the following cases: Whitney v. Roberts, 22 Ill. 381; Smith v. Wright, 49 Ill. 403; Ross v. Payson [43 N. E. 399] 160 Ill. 349; Prince v. Dupuy [45 N. E. 298] 163 Ill. 417; Lewis v. McGrath [61 N. E. 135] 191 Ill. 401; Rickman v. Meier [72 N. E. 1121, 213 Ill. 507]."

[3] Here the defendants were told that the mortgage was void, that a decree so finding had been entered, and that it was no longer a lien. They bought the property in good faith. There was no ratification of the fraud. Under the rules stated, by the conveyance, they received not only the property, but also the incidental right to attack the outstanding mortgage to the same extent that the original mortgagor might have done so.

The sale carried the furniture and fixtures of the hotel and a 12-year unexpired portion of a 15-year lease upon the premises, under which the rental was $1,000 per month for the first 3 years, and $14,000 per year for the remaining 9 years. Defendants charge: That Lewis had never lived in Champaign, where the hotel was located. That he had no knowledge of the facts, except as he obtained it from plaintiff. That he relied upon the truth of plaintiff's statements. That the books of account were altered, padded, and untrue, and did not represent the actual amount of business transacted by said hotel, or the cash receipts thereof. That said books showed a larger and greater income to have been obtained by said hotel than had actually been obtained by it, and that the said Max B. Pattiz had changed and altered said books for the purpose of inducing the said James C. Lewis to purchase said hotel equipment, and to lease said hotel building. That said Max B. Pattiz furnished a statement of the monthly income from guest rooms, coffee shop, pool and billiard room, barber shop, dance hall, and cigar counter, and other sources, made up from said fraudulent books, and represented the income to be as follows: Receipts: Room, average, $4,572.24. Subrent: Coffee shop, $122.50; billiards, $75; barber, $50; hall, $100; cigar counter and miscellaneous, $100. Total, $5,019.74. That the above statement so furnished was false, and that the said Max B. Pattiz knew the same to be false at the time the same was submitted by him to the said James C. Lewis. That the pool and billiards room in said hotel was not rented for the sum of $75 per month, except for the three summer months, when it was rented for $50, as represented to the said James C. Lewis by the said Max B. Pattiz; but that the same was, in fact, rented for the sum of $15 per month during the three summer months, and for $50 per month during the balance of the year. That said Max B. Pattiz, in order to make the same appear as having been rented for $75 per month, had falsely and fraudulently given to the tenant of said pool and billiards room his own personal check, and induced the said tenant to cash the same and to pay said Max B. Pattiz, in the presence of the said James C. Lewis, the amount so received on the said Max B. Pattiz's check of $35, together with the additional $15, which said tenant was to have paid, making the total sum of $50, which said tenant was to pay according to the representation of the said Max B. Pattiz, for the three summer months, above referred to. That the other statements of fact were untrue, and grossly overstated the subrentals and the average room rentals, and that Lewis relied upon said fraudulent representations, and because of the same and thereby was induced to purchase said property.

The evidence amply supported these allegations. To be sure, the testimony as to the inclinations and actions of both the original vendor and vendee and the correspondence introduced constitute a sordid tale, a sad commentary upon the commercial integrity of the modern followers of the hospitable

Boniface. The proverbial genial host, dispensing hospitality, if these tales are to be believed, has devolved into an artful, scheming publican, wholly devoid of regard for integrity or truth. But the fact is clearly established that the plaintiff did grossly misrepresent the amount of his subrentals, the returns from the rooms, and the volume of business transacted by him, all materially affecting the value of what he sold. Without question he did pad and alter his books to obtain the figures he submitted upon these various subjects, and, although Lewis did not rely upon the books, he did rely upon the written statements made from the same.

[4] The statements as to past and present rents, past patronage, and past profits of the business were material, and, being false, were fraudulent. O'Donnell Co. v. Farrar, 45 N. E. 283, 163 Ill. 471; Vulcan Metals Co. v. Simmons Mfg. Co., 248 F. 853, 161 C. C. A. 7, and cases cited in 26 Corpus Juris, 1204. Nor will plaintiff's contention that Lewis was negligent be allowed to militate against the rule; for, where the representation is made in positive terms as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation, and this is true, although the means of investigation were within the reach of the injured party, and the parties occupied adversary positions toward each other.

[5] Since the very purpose of fraud is to cheat the victim by making him neglect the precautions essential to prevent injury, to deny relief because the victim was negligent would encourage dishonesty. In such cases the fraud-feasor will not be heard to say that he is a person unworthy of belief, and that plaintiff was negligent in trusting him, and was cheated through his own credulity. 26 Corpus Juris, 1146, 1147; Strand v. Griffith, 97 F. 854, 38 C. C. A. 444; Walker & Co. v. Walbridge, 136 F. 19, 68 C. C. A. 569. The Illinois rule is to the same effect. See Leonard v. Springer, 64 N. E. 299, 197 Ill. 539; Linington v. Strong, 107 Ill. 295; Loveland v. Lindsey, 137 Ill. App. 547; Howell v. Wyatt, 168 Ill. App. 651; Hughes v. Lockington, 77 N. E. 1105, 221 Ill. 571.

[6] The defendants properly set up the damages as a defense. One who by fraud has been induced to enter into a contract may affirm the contract and maintain an action to recover the damages which he has sustained, or may set up such damages by way of defense or recoupment or counterclaim. 27 Corpus Juris, 18; U. S. Trust Co. v. Chicago T. T. R. Co., 188 F. 292, 110 C. C. A. 270; Siltz v. Springer, 85 N. E. 748, 236 Ill. 276; Peck v. Brewer, 48 Ill. 54. In U. S. Trust Co. v. Chicago T. T. R. Co., 188 F. 292, 110 C. C. A. 270, speaking for the Circuit Court of Appeals for this circuit, Judge Baker said: "A victim whose property rights have been injured by a fraud may elect to accept the situation created by the fraud and seek to recover his damages, or he may elect to repudiate the transaction and seek to be placed in statu quo."

No provision of the Uniform Sales Act prevents the defense presented in this case. Under the provisions of section 73 of that act, the law as to the effect of fraud or misrepresentation upon contracts of sales of goods remains as it was before the passage of the act. The defense presented is not a recoupment for breach of warranty, but relies upon a right existing independent of the Sales Act, based upon the misrepresentation and fraud of the plaintiff. If the issues were such that plaintiff could rightfully insist that the defense should fail, unless defendant showed reasonable notice of the alleged defect in the goods purchased, plaintiff's position would not be bettered, for the reason that the evidence discloses reasonable notice of the claim of fraud. There is no doubt that, as soon as Lewis discovered the falsity of the representations made to him, he gave plaintiff notice of that fact, and never thereafter did anything to estop him or his assignee from asserting the same.

It follows that, as the fraud complained of is clearly proved, as it was relied upon by Lewis, as the damages resulting therefrom exceed the amount claimed to be due upon the mortgage, and as there has been no ratification, the plaintiff is forever barred from recovering upon the notes and mortgage sued upon, and his bill must be and is dismissed, for want of equity, at his costs.