FLORENCE ROSS *et al.*

*v.*

LEWIS E. PAYSON *et al.*

*Filed at Ottawa January 20, 1896—Rehearing denied March 17, 1896.*

| | |
|---|---|
| 160 | 349 |
| 172 | 121 |
| 160 | 349 |
| 77a | 637 |
| 77a | 640 |
| 78a | 244 |
| 78a | 371 |
| 160 | 349 |
| 178 | 528 |
| 160 | 349 |
| 179 | 10 |
| 160 | 349 |
| 191 | ³408 |
| 160 | 349 |
| s100a | 45 |

1. ATTORNEYS AT LAW—*duty of, to counsel client against wasting his estate.* It is the duty of an attorney at law, acting as a client's general legal adviser, to counsel such client against the reckless disposition of his estate.

2. SAME—*cannot avail of client's reckless disposition to waste property.* An attorney, acting as general counsel and adviser, cannot avail himself of his client's inclination to waste his estate, by receiving conveyances of his property for an inadequate consideration.

3. SAME—*must establish fairness, equity and adequacy of consideration.* Deeds given by a client disposed to waste his estate to prevent his heirs receiving it, to his attorney, will be set aside unless such attorney establishes fairness, adequacy and equity in the conveyance.

4. LIMITATIONS—*when client's deed to attorney is not color of title.* A deed made by an aged client to his attorney, for an inadequate consideration, is not such color of title made in good faith that possession thereunder and payment of taxes for seven years will give title by adverse possession.

5. SAME—*when statutory limitation, and not mere laches, applies.* The doctrine of *laches* during a period less than that fixed by the Statute of Limitations will not be applied to prevent relief against the abuse of the relation of trust and confidence arising between attorney and client, unless the defendant will be injured through the delay by granting the relief.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

WILLIAMS & CAPEN, and E. M. PRINCE, for plaintiffs in error:

Conveyances by a client to his attorney are presumed to be fraudulent, and the burden of proof is upon the attorney to show they are not so. *Jennings* v. *McConnell,* 17 Ill. 148; *Zeigler* v. *Hughes,* 55 id. 288 ; *Morrison* v. *Smith,* 130 id. 304 ; *Elmore* v. *Johnson,* 143 id. 513 ; *Wells* v. *Middleton,* 1 Cox, 112 ; *Cowee* v. *Cornell,* 75 N. Y. 91; *Roby* v. *Colehour,* 135 Ill. 300.

To sustain such deeds the attorney must negative every element of fraud, and show, affirmatively, first, the utmost good faith; second, the absence of undue influence, —that the client was so placed as to be able to deal with his attorney "at arm's length;" third, that he paid a fair price for the property; and fourth, that he gave his client disinterested advice. *Morrison* v. *Smith, supra; Elmore* v. *Johnson, supra; Dun* v. *Dun,* 42 N. J. Eq. 431; *Cooper* v. *Lee,* 75 Tex. 114; *Gibson* v. *Jeyes,* 6 Ves. 266; *Kissling* v. *Shaw,* 33 Cal. 425; *Whelan* v. *Whelan,* 3 Cow. 537; *Ford* v. *Harrington,* 16 N. Y. 288; *Rogers* v. *Marshall,* 3 McCrary, 76; *Atwood* v. *Mansfield,* 59 Ill. 496; Story's Eq. Jur. secs. 311, 312; 2 Pomeroy's Eq. Jur. sec. 489.

The consideration paid for these lands was so grossly inadequate that the court will presume the deeds thereto were obtained by fraud. *Macoupin County* v. *People,* 58 Ill. 191; *Butler* v. *Haskell,* 4 Desaus. 651; *Madison County* v. *People,* 58 Ill. 456; *Taylor* v. *Richford,* 2 Ves. Sr. 281; *Duncombe* v. *Richards,* 46 Mich. 166; *Burch* v. *Smith,* 15 Tex. 219; *McCormick* v. *Marlam,* 5 Black, 509; *Brooke* v. *Berry,* 2 Gill, 83; Bispham's Eq. sec. 219, p. 276.

Whenever there is a great mental weakness in a person executing a conveyance of land, arising from age, sickness or any other cause, though not amounting to an absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will set the conveyance aside. *Allore* v. *Jewell,* 4 Otto, 506; *Kempson* v. *Ashley,* L. R. 10 Ch. 15; *Duncombe* v. *Richards,* 46 Mich. 166; *Moore* v. *Moore,* 56 Cal. 89; *Rau* v. *Zeidlitz,* 132 Mass. 164; *Parkhurst* v. *Hosford,* 21 Fed. Rep. 827; *Harding* v. *Handy,* 11 Wheat. 103; *Tracy* v. *Sackett,* 1 Ohio St. 54.

The purchase by defendant Payson, while he was acting as Franklin Oliver's attorney, of certificates of purchase on sheriff's sales on execution against Oliver, was fraudulent. *Hall* v. *Hallett,* 1 Cox, 134; *Wright* v. *Walker,* 30 Ark. 44; *Briggs* v. *Hodgdon,* 78 Me. 514; *Cunningham* v. *Jones,* 37 Kan. 477.

If it is once established that a person who stands in a position of commanding influence towards another has obtained a considerable advantage from him while in that position, it will be presumed, in the absence of rebutting evidence, that the advantage was obtained by undue influence. Benjamin on Contracts, 85; *Dent* v. *Bennett*, 4 M. & C. 269; *Woodbury* v. *Woodbury*, 141 Mass. 329.

A person of unsound mind is one who is incapable of transacting the particular business in hand. *Seerly* v. *Sater*, 68 Iowa, 375; *Gates* v. *Connett*, 72 Mich. 420; *Craig* v. *Southard*, 148 Ill. 37; *Greene* v. *Greene*, 145 id. 264.

Acts and contracts of persons who are of weak understanding, and who are therefore liable to imposition, will be held void in courts of equity, if the nature of the acts or contract justifies the conclusion that a party has not exercised a deliberate judgment, but that he has been imposed upon. *Gartside* v. *Isherwood*, 1 Brown's Ch. 558; *Tracy* v. *Sackett*, 1 Ohio St. 54; *Dunn* v. *Chambers*, 4 Barb. 376; *Buffalow* v. *Buffalow*, 2 Dev. & B. Eq. 241; *Cruise* v. *Christopher*, 5 Dana, 181.

It makes no difference that the four hundred acres were purchased at a public sale. 1 Story's Eq. sec. 322; *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Saltmarsh* v. *Beene*, 4 Port. 283; *Litchfield* v. *Cudworth*, 15 Pick. 23; *Campell* v. *Walker*, 5 Ves. 678.

In determining Franklin Oliver's capacity to make a contract, the law will look rather at his substantial business acts than to his conversation or occasional doings. Buswell on Insanity, 227.

Under such a state of facts as appears in this record the heirs are not barred from relief until the expiration of twenty years. *Perry* v. *Craig*, 3 Mo. 516; *Castner* v. *Walrod*, 83 Ill. 71; *Kane County* v. *Herrington*, 50 id. 232; *Beaumont* v. *Boultbie*, 7 Ves. 615; *Gresley* v. *Mousley*, 4 DeG. & J. 78; *Michaud* v. *Girod*, 4 How. 503; *Prevost* v. *Gratz*, 6 Wheat. 481.

The disability of an attorney to contract with his client is not confined to litigated property in regard to which

the attorney is employed, but applies to all transactions. *Hopkinson* v. *Jones,* 28 Ill. App. 409; *Jennings* v. *McConnell,* 17 Ill. 148; *Morrison* v. *Smith,* 130 id. 304.

A person may be competent to do some kinds of business,—even to make a will,—and yet not competent to sell and convey land. *Craig* v. *Southard,* 148 Ill. 37; *Harrison* v. *Rowan,* 3 Wash. C. C. 580; *Greene* v. *Greene,* 145 Ill. 264.

There can be no confirmation until the relation of client and attorney has been dissolved and the influence arising from that relation has ceased to act upon the mind of the client. *Butler* v. *Haskell,* 4 Desaus. 702.

Purchases by an attorney of his client pending litigation of the property in dispute are absolutely void, on grounds of public policy. *West* v. *Raymond,* 21 Ind. 305; *Simpson* v. *Lamb,* 40 Eng. L. & Eq. 59; *Harper* v. *Perry,* 28 Iowa, 57; Weeks on Attorneys, sec. 273, p. 554.

N. J. Pillsbury, and C. C. Strawn, for defendants in error:

As to the degree of mental capacity necessary to enter into valid contracts, see *English* v. *Porter,* 109 Ill. 285 ; *Kimball* v. *Cuddy,* 117 id. 213; *Perry* v. *Pearson,* 135 id. 218; *Burt* v. *Quisenberry,* 132 id. 385; *Francis* v. *Wilkinson,* 147 id. 370; *Greene* v. *Greene,* 145 id. 264; *Pooler* v. *Cristman,* id. 405; *Guild* v. *Hull,* 127 id. 534; *Argo* v. *Coffin,* 142 id. 368; *Delafield* v. *Parish,* 25 N. Y. 9; *In re Kiedaisch's Will,* 3 N. Y. Sup. 258; *Jackson* v. *King,* 4 Caro. 207; *Rugin* v. *Sabin,* 53 Fed. Rep. 415; *Stewart's Exrs.* v. *Lispenard,* 26 Wend. 255.

A contract between attorney and client, if fair, is as valid as though they were strangers. *Morrison* v. *Smith,* 130 Ill. 304; *Elmore* v. *Johnson,* 143 id. 513; *Bank* v. *Keeler,* 109 id. 385.

There is no rule of law that prohibits an attorney from becoming a purchaser at a judicial sale even of the land of his client. *Hess* v. *Voss,* 52 Ill. 472.

Inadequacy of price, great as it may appear, is not sufficient, of itself, to set aside a judicial sale, where

redemption is given, unless there are some indications of fraudulent practice, or some advantage taken against the debtor not warranted by law.    *Mixer* v. *Sibley*, 53 Ill. 61; *Roberts* v. *Fleming*, id. 196; *Hay* v. *Baugh*, 77 id. 500.

And especially where the land has been sold to innocent purchasers.    *Davis* v. *Pickett*, 72 Ill. 483; *McMullen* v. *Gable*, 47 id. 67.

The relief sought by the bill is barred by *laches* as to the lands purchased by the defendant in error at judicial sale, or where he purchased certificates of sale issued at such judicial sale.    *Winchell* v. *Edwards*, 57 Ill. 41; *Noyes* v. *True*, 23 id. 503; *Prather* v. *Hill*, 36 id. 405; *Cox* v. *Montgomery*, id. 396; *Fergus* v. *Woodworth*, 44 id. 379; *McHany* v. *Schenk*, 88 id. 357; *Jackson* v. *Spink*, 59 id. 404; *Bates* v. *Gillett*, 132 id. 287; *Castner* v. *Walrod*, 83 id. 176; *Rigney* v. *Small*, 60 id. 416.

The sheriff's deed is evidence that the law has been complied with, until the contrary appears.    *Jackson* v. *Spink*, 59 Ill. 404; *Phillips* v. *Coffey*, 17 id. 154; *Kinney* v. *Knoebel*, 47 id. 417.

Unreasonable delay of a client to assert his right, after full knowledge of the facts, to set aside a sale to his attorney, even if he once had the right to rescind, will bar his equities.    *Uhlich* v. *Muhlke*, 61 Ill. 513; *Elmore* v. *Johnson*, 143 id. 513; *Morrison* v. *Smith*, 130 id. 304; *Bank* v. *Keeler*, 109 id. 385; *Rugin* v. *Sabin*, 53 Fed. Rep. 415.

The statute of limitations of seven years is a bar to the relief prayed in the bill, as it would be a bar at law. *McCormick* v. *Street*, 17 Ill. 253; *Brooks* v. *Bruyn*, 24 id. 372; *Bolden* v. *Sherman*, 110 id. 418; *Grant* v. *Badger*, 128 id. 386; *Holbrook* v. *Gouveneur*, 114 id. 623; *Hancock* v. *Harper*, 86 id. 445; *Carpenter* v. *Carpenter*, 70 id. 457; *Quayle* v. *Guild*, 91 id. 378; *Sloan* v. *Graham*, 85 id. 26.

When the statute begins to run it is not arrested by subsequent disability.    So the death of the party debtor will not stop its running.    *Bonney* v. *Stoughton*, 122 Ill. 536; *Keil* v. *Healey*, 84 id. 104; *Fritz* v. *Joiner*, 54 id. 101; *Piper* v.

*Hoord*, 107 N. Y. 67; *DeKay* v. *Darrah*, 2 Green, (N. J.) 280; *McDonald* v. *Hovey*, 110 U. S. 619.

Voidable contracts can be ratified, and long acquiescence will imply a ratification. *Hamilton* v. *Lubukee*, 51 Ill. 415; *Munn* v. *Burges*, 70 id. 604; *Sloan* v. *Graham*, 85 id. 26.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Plaintiffs in error seek the reversal of a decree of the circuit court of Livingston county dismissing their bill in equity, as the heirs-at-law of Franklin Oliver, deceased, against Lewis E. Payson and certain parties claiming under him, to set aside conveyances of real estate formerly belonging to said Oliver, alleged to have been fraudulently obtained by the defendant Payson.

Franklin Oliver died intestate October 19, 1881, leaving surviving him two daughters (Florence Ross and Caroline Hunnicut Dorr) and five sons (Edward R., Franklin C., Elias B., Revilo and John,) and also three grandsons (Frank and Charles Foster, and George Miller,) children of a deceased daughter. This action was begun by said daughters filing their bill to the May term, 1892, of the circuit court, making the other heirs and Payson defendants therein. Subsequently these heirs, by cross-bill, became complainants, seeking the same relief as was prayed by the daughters in the original bill.

Prior to the death of Franklin Oliver, Payson received deeds to lands which Oliver had owned, as follows: Sheriff's deeds dated March 27, 1878, to 320 acres, and June 8, 1878, to 80 acres. These 400 acres had been sold on an execution and certain fee bills issued on a judgment in favor of W. H. H. Cushman against said Franklin Oliver, and bid in by Payson. The time of redemption having expired prior to the above dates, deeds were duly executed to him.—Also a deed from Oliver to Payson, dated October 19, 1878, to 260 acres, in consideration of $1500, being the west half of the north-west quarter of section 32, township 26, north, range 8, east of the third

principal meridian, in Livingston county, Illinois; lot 5, north-west quarter of section 5, and the east half of lot 5, north-east quarter of section 6, township 25, north, range 8, east of the third principal meridian, in Livingston county, Illinois.—Another dated June 11, 1879, to 360 acres, in consideration of $1600, being lots 2, 3 and 4, north-west quarter of section 5, and the east half of lots 2, 3 and 4, north-east quarter of section 6, in township 25 north, range 8, east of the third principal meridian. These lots had been previously sold at sheriff's sales, and Payson held certificates of purchase for the same, amounting to about $750.—Another, dated June 19, 1879, to 80 acres, the consideration being services by Payson, as the attorney for Oliver, in going to New Jersey with him and paying his expenses, for the purpose of investigating certain claims by the latter to real estate at or near Bordertown, in that State. The value of these services and the money paid out for expenses do not satisfactorily appear, but they certainly did not exceed $500.—And still another, dated September 16, 1879, to 80 acres, in consideration of $500, being lot 1, in the north-east quarter of section 6, township 25, north, range 8, east. In all, Payson received deeds to 1180 acres from Oliver.

The complainants, both in the original and cross-bills, seek to have these conveyances set aside, upon the grounds, first, that when they were made the grantee, Payson, was acting as the attorney and confidential adviser of Franklin Oliver, and procured them in violation of his duty in that regard; and second, that at the time they were made Oliver was mentally incompetent to transact business. As to the 400 acres conveyed by sheriff's deeds, it is further alleged that redemption of the same was prevented by Payson by his representing to a son of Oliver that he was acting as the attorney and friend of his father, and would attend to the matter of redemption, or words to that effect. The defendant denies each of these allegations, and sets up the statute

of limitations, and *laches* on the part of complainants in bar of the action.

That Payson was employed by Oliver as his attorney in certain litigation during the period of the several conveyances, except the first, is not denied. When he was first so employed is one of the controversies of fact between the parties, but we think the clear preponderance of the proof is that it was not earlier than September 23, 1878. Prior to that time he had been the attorney of Cushman in the case which resulted in the judgment on which the sheriff's deeds of March 27 and June 8, 1878, were based, and was also employed against him in other litigation. He was certainly not his attorney either at the dates of the sheriff's sales of the 400 acres or when he received his sheriff's deeds thereto. Revilo Oliver, one of the sons, testified to a conversation with Payson in September, 1877, about redeeming these lands, in which he says: "I told him that I had come down to see about redeeming that land; that I was in a fix that I would redeem it, I thought, pretty soon, and I wanted him to tell me the amounts and just when it would have to be paid, and he says: 'You need not bother about that. Your father and I made an arrangement to redeem it, and I will look to that. I am his attorney and his friend as well. I will see to all those things.'" Payson denies that any such conversation took place, and testifies positively that nothing whatever was said to him at any time about such redemption. The son does not claim that he was authorized by his father to act in the matter, nor state by what right, if any, he expected to redeem. It cannot, we think, be seriously contended that the weight of the evidence is with the complainants below on this issue. Assuming that on the allegations of their bill and cross-bill the heirs of Oliver could set up his mental incapacity to transact business, against the sheriff's deeds, we think the evidence fails to prove such incapacity, at least when fairly dealt with, and there is nothing in this

record to show that at that time or prior thereto Payson had exercised, or attempted to exercise, any influence over him whatever. On the contrary, as stated above, prior to that time the relation of the parties had been antagonistic. The decree below is, therefore, in our opinion, clearly sustained by the testimony as to the deeds to the 400 acres.

The subsequent conveyances, involving direct personal contracts and dealings between the parties during the existence of the relation of attorney and client, are involved in much greater difficulty. Within less than one year these four deeds, conveying 780 acres of land, were executed by Oliver to Payson. That the consideration agreed to be paid for them did not exceed one-sixth of their fair value is clearly shown. As before stated, it is admitted that Payson was, during this period, the attorney of Oliver in certain litigated cases, and we think it is established by the proof that he was also during that time his general counsel and adviser. This is shown by his own letters to both Oliver himself and his son Revilo.

On the question of Franklin Oliver's mental condition the evidence is irreconcilably conflicting. When the deed of October 19, 1878, was made, he was about ninety-one years old. Earlier in life he had been above the average in intelligence of men with whom he was associated, and was educated to the profession of a civil engineer and surveyor. But he was always a very peculiar man, exhibiting many eccentricities, and this became more marked as he grew older. As we have said, the evidence in this record fails to prove him incapable of transacting the ordinary business affairs of life. He was, however, at the time in question, in a condition of mind to be easily influenced, by those in whom he confided, in the direction of his own bent or inclination of mind. He seems to have determined that his children should have no part of his property. As to one, or possibly more of them, some motive for that determination is shown, but as to the

others there was none. He had no cause of quarrel with them and was at no time unfriendly toward them, and his purpose to indiscriminately disinherit them was therefore unreasonable. It is fair to presume that he readily entered intô business transactions which tended to the accomplishment of that purpose. Instead of desiring the preservation of his estate he sought constantly for the means of wasting it, so that his heirs might not receive it. It need only be suggested that in such a condition of mind he could be easily influenced to sell one tract of land after another for a mere fraction of its actual value, as he did.

It goes without saying, in this connection, that a man has a perfect right to do as he will with his own; but the defendant can only invoke that principle in this case by. proving that his grantor acted understandingly, and was fully advised of his rights and duties, and was fairly dealt with by himself. Being the attorney of his grantor, it was Payson's duty to counsel and advise him against the reckless disposition of his estate, and he could not legally avail himself of that inclination by receiving deeds to his property. Thus it is said in Story's Equity Jurisprudence, (sec. 310): "The situation of an attorney or solicitor puts it in his power to avail himself, not only of the necessities of his client, but of his good nature, liberality and credulity, to obtain undue advantages, bargains and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which, between other persons, would be held unobjectionable." In *Jennings* v. *McConnel*, 17 Ill. 148, Chief Justice Scates, rendering the opinion of the court, quoted with approval the foregoing language, and said (p. 150): "And this is applicable to contracts or gifts generally, while the confidential relation continues, and is not confined to particular property about which the attorney may have been employed. It is not required

that a client should establish fraud or imposition.  The *onus* of proof, upon showing the relation when the contract or gift was made, is upon the attorney to show fairness, adequacy and equity, and upon failure to make proof, courts of equity treat the case as one of constructive fraud."  The doctrine here announced has never been departed from by this court, but often reiterated.  *Alwood* v. *Mansfield,* 59 Ill. 496; *Laclede Bank* v. *Keeler,* 109 id. 385; *Morrison* v. *Smith,* 130 id. 304; *Elmore* v. *Johnson,* 143 id. 513.

That there is evidence in the record tending to show that the transactions were entered into by Oliver understandingly and of his own determination, and that he was not unduly influenced to make them, may be conceded; but that the defendant has failed to establish "fairness, adequacy and equity" as to the conveyances of October 19, 1878, June 11, June 19 and September 16, 1879, is to our minds perfectly clear.

"As a general rule, where the statute has fixed the period of limitation under which a claim in a court of law would be barred, courts of equity, by analogy, will adopt the limitation thus fixed.  'A court of equity will, however, often treat a lapse of a less period than that provided in actions at law as a presumptive bar, on the ground of discouraging stale claims, or gross *laches,* or unexplained acquiescence in the assertion of an adverse right.'" (*Bates* v. *Gillett,* 132 Ill. 287, and cases cited.)  The question is, then, can it be said that the facts of this case bring it within the exception to the general rule that courts of equity will, under certain circumstances, hold the action barred in a less period than that fixed by the Statute of Limitations, which is twenty years?

No fixed rule has been or can be laid down for the government of courts in determining what is a reasonable time within which to bring the action, but each case must be determined from all the facts and circumstances presented in proof.  It is true, Payson was in possession of the lands under color of title, and paid all taxes thereon

for more than seven years; but his color of title was not made in *good faith*, as we have already seen, and is therefore no bar under the seven year statute.

That *laches* may be interposed as a defense in an action of this kind was expressly held in *Elmore* v. *Johnson, supra,* and in principle announced in many previous decisions of this court. The rule laid down in *Wood* v. *Downes,* 18 Ves. Jr. 130, (note 1,) was approvingly referred to in the *Elmore case,* and it is to the effect that "length of time weighs less in such a case than in any other," and that it is "extremely difficult for a confidential agent to set up an available defense grounded on the *laches* of his employer." We think there is great force, reason and equity in this statement of the law. It is further said in the *Elmore case:* "Where bills are filed to set aside contracts or deeds between parties standing in a confidential relation with each other, the defense of *laches* is not usually regarded with favor." It was allowed to prevail in that case because of affirmative acts of the complainant.

That one who has violated a duty which he owes to another, and thereby obtained that other's property, should be allowed to say that he may retain it because an action has not been brought promptly, even though the Statute of Limitations has not run, seems inequitable and unjust, and, as is shown in the case last above referred to, he will not be allowed to do so unless the party complaining has knowingly acquiesced in the conveyance, or done some affirmative act calculated to induce the belief that he does not intend to question it, or there are such facts and circumstances in the case as indicate that the action is speculative. In other words, if a court of equity can grant relief against the abuse of the relation of trust and confidence arising out of the relation of attorney and client, without injury to the defendant or other interested parties, we see no reason why a period of delay in bringing a suit less than that fixed by some statute of limitations should bar the right of the complainants.

"A court of equity applies the doctrins of *laches* in denial of relief prayed, where the statutory period of limitations has not expired, only where, from all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled, will, presumptively, be inequitable and unjust, because of the delay, to the defendants." *Stiger* v. *Bent*, 111 Ill. 328.

In this case we are unable to see wherein the defendant Payson can be injured by granting the prayer of the bill and cross-bill of the complainants therein.  He can, by a fair accounting, be. fully compensated for all the money he has expended, either in the purchase, improvement or payment of taxes upon the land.  As to such of the lands as he has fairly sold, he can be required to account only for the proceeds after being reimbursed for all expenditures made by him.  There has been some increase in the value of the lands, but not such as to justify the conclusion that this action is speculative, or would not have been brought but for such increase.  The most that can be said of the conduct of the complainants is, that they have been silent when they should have spoken.  They have done no affirmative act calculated to induce the defendant Payson to believe that they did not, at some time, intend to insist upon their legal rights, and the proof is clear that Payson knew, prior to the death of the intestate and afterward, to the bringing of this suit, that at least some of the heirs were dissatisfied with the manner with which he had obtained the lands in question and that some of them were threatening to bring suits.  On the whole case, we find no sufficient reason for holding that there has been such delay on the part of complainants in either the bill or cross-bill as to bar their right of recovery.  That this is true as to the complainants in the original bill is beyond all controversy, Florence Ross having attained her majority only a few months prior to filing her bill, and her sister, Caro-

line, having always been mentally incapable of looking after and protecting her interests.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to that court to enter a decree in conformity with the views here expressed.                    *Reversed and remanded.*