(No. 15501.—Decree affirmed.)

JULIA A. ALLEN, Appellant, *vs.* RUSSEL R. McGILL *et al.* Appellees.

*Opinion filed February 19, 1924.*

1. DEEDS—*when deed is valid although fiduciary relation exists.* Where a deed is a voluntary act of the grantor, with full knowledge of its nature and effect, and is in accordance with his expressed desire and purpose, the existence of a fiduciary relation between him and the grantee does not render the conveyance void.

2. SAME—*existence of fiduciary relation places burden on the grantee or beneficiary.* Where a fiduciary relation exists, the burden of proof is on the grantee or beneficiary of the instrument executed during the existence of such relationship to show the fairness of the transaction, that it is not against equity and good conscience, and that it did not proceed from undue influence.

3. SAME—*when a fiduciary relation exists—equity.* A fiduciary relation exists where confidence is reposed upon the one side and resulting superiority and influence on the other, and in all cases where such influence has been acquired and abused or where confidence has been reposed and betrayed, a court of equity will set aside an instrument made through such undue influence.

4. SAME—*old age and feeble health of grantor do not, alone, justify setting aside deed.* The facts that the grantor was old and in feeble health and had hardening of the arteries and a poor memory do not justify setting aside his deed, where the weight of the evidence sustains the finding that he was mentally competent to make a deed.

5. SAME—*who may testify in a suit by heirs to set aside deed.* Where an ancestor executes and delivers a deed to one of his chil-

dren, and another child or children seek to set the deed aside after the grantor's death, the children not grantees, although heirs, may testify generally in such proceeding, for the reason that the grantee is defending as grantee and not as heir; but the grantee is not competent to testify generally, for the reason that the complainants sue as heirs.

6. SAME—*grantee may testify in rebuttal in suit by heirs to set aside deed.* Where an ancestor has executed a deed to one of his children and after his death the other children seek to set it aside, the grantee, although he is not competent to testify generally, may testify in rebuttal concerning conversations given in evidence by the complainants.

7. SAME—*when decree will not be reversed notwithstanding error in admission of evidence.* Where the hearing in a suit to set aside a deed and for partition is before the chancellor without a jury, it will be presumed, on appeal, that the chancellor considered only competent evidence, and in such case the decree will not be reversed because of error in the admission of evidence, where the competent evidence in the record sustains the decree.

APPEAL from the Circuit Court of Hamilton county; the Hon. CHARLES H. MILLER, Judge, presiding.

HARRY ANDERSON, and J. H. LANE, for appellant.

HOGAN, HOGAN & CONRAD SCHUL, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, Julia A. Allen, together with other heirs-at-law of Francis Marion Johnson, deceased, filed a bill in the circuit court of Hamilton county for partition of the south half of the southeast quarter of section 17 and the northwest quarter of the northeast quarter of section 20, in town 6, south, range 6, east, in that county. By their bill they alleged that Johnson died seized in fee of this land; that during his lifetime he executed and delivered a pretended warranty deed purporting to convey the southwest quarter of the southeast quarter of section 17 to appellees, Russel R. McGill and Ancie B. McGill, as joint tenants, for

the expressed consideration of one dollar, love and affection and other good and valuable considerations. It was alleged that at the time of the making of the deed he was past eighty-four years of age, was in his dotage and mentally incapable of understanding the nature of the transaction and of transacting ordinary business; that one of the grantees in the deed, Ancie B. McGill, is a daughter of the deceased, and was, with her husband, Russel R. McGill, living at the home of the grantor; that the latter was under the influence of the grantees in the deed, and that they exercised undue influence in procuring the making of the deed; that the deed was made by their fraudulent arts, persuasions and deceits. The bill prayed that the deed be set aside and that partition be had of the entire premises mentioned in the bill. Appellees were made defendants thereto and answered, admitting the material averments of the bill except as to the incapacity of the grantor to execute the deed in question and as to allegations of undue influence. Hearing was had in open court before the chancellor, who found the issues concerning the deed in question for the appellees; that at the time of the making of the deed in question Johnson was of sound mind, and that by that deed the forty acres of land in question passed in fee simple to the appellees and was not subject to partition. A decree in accordance with this finding and granting partition of the balance of the property was entered, and Julia A. Allen, a daughter, prayed and perfected her appeal.

Error is assigned on the finding of the chancellor that Francis Marion Johnson was mentally capable of making the deed in question and that it was not procured by undue influence on the part of the appellees. It is also contended that the court erred in permitting the appellees to testify in their own behalf and in rejecting certain competent evidence offered on behalf of complainants. As no argument is addressed to the latter part of this objection it will not be considered.

Francis Marion Johnson, the deceased, had lived on the tract of land in question for many years and at the time of the making of the deed was eighty-four years of age. He had been failing in health for some time prior to his death, had been treated by the family physician for kidney and bladder trouble, which developed into Bright's disease, from which he died on September 20, 1922. The family physician testified that by reason of this disease it was necessary to give him special attention in the matter of ordinary functions of the body for a period of about a month prior to his death; that at intervals, as he grew weaker, he at times seemed more or less irrational; that the disease affected his memory in the latter days of his life to such an extent that at times his mind would seem to be a blank while at other times his mind and memory were very good; that during the last three months of his life he was confined most of the time to the house though not to his bed; that he had arteriosclerosis, or hardening of the arteries; that such disease frequently accompanies old age and is progressive in its nature, affecting the mind and the body to a greater or less degree as the time of death approaches; that by reason of the lessening of nourishment carried to the brain the mind becomes more inactive as the disease progresses; that, however, a patient may have hardening of the arteries and Bright's disease and still be capable of transacting ordinary business.

The uncontroverted evidence shows that about a year before the death of the grantor the appellees were induced, after some persuasion, to leave the farm of sixty acres on which they were living, about three miles from the Johnson home, and to move into the homestead with the deceased and his wife, the latter of whom died about a month after this change was made. The evidence shows that they were solicited by the deceased and his wife to move in with them, and that other members of the family were so situated that they could not well do so. The record contains some evi-

dence to the effect that there was a contract that appellees were to receive five dollars a week for taking care of the two elderly people. The record does not show with whom such contract was made or by whom the consideration was to be paid, nor does the record show whether it was paid. After the death of Mrs. Johnson the appellees remained at the homestead and cared for the grantor until the time of his death. The deed in question was executed on the 8th day of July, 1922, about two months prior to the death of the grantor. The scrivener of the deed was one Cantrell, a justice of the peace, who lived in the neighborhood. After the deed was made it was signed by the deceased by his mark and witnessed by two residents of the neighborhood named Hicks and Oglesby. In the preparation of the deed the word "widow" was used instead of "widower," and the letter "u" was omitted from the word "south" in the description of the land. A day or two after the delivery of the deed it was taken back to Johnson by the scrivener who originally prepared the deed and these corrections were made at his direction, the grantor saying that he hoped that he got it right this time.

As is usual in these cases, much testimony was offered upon both sides pertaining to the mental condition of the grantor. Complainants offered the testimony of twelve witnesses, most of whom testified concerning that matter. The appellees offered the testimony of thirty-two witnesses, most of whom likewise testified concerning the mental condition of the grantor. No good purpose will be accomplished by lengthening this opinion to an extent sufficient to review all this testimony. It appears from a reading of it as abstracted, that Johnson was an old man in feeble physical condition at the time of the execution of the deed, who required care and attention because of that fact. It appears that at times the appellee Russel R. McGill transacted such business matters for the deceased as he desired or directed that he do. Three checks for small amounts were intro-

duced in evidence, indicating that they had been drawn by McGill on behalf of the grantor. There was also testimony of some conversations between the appellant and other complainants in the bill and the appellees relative to having a conservator appointed for him, but no steps were taken in that direction. The evidence also shows that some time prior to making the deed the grantor told witnesses that he expected to make a deed to the appellees of some land; that during the spring or summer of 1921, prior to the time when the appellees moved in with the deceased and his wife, appellee Ancie B. McGill drove back and forth each day to wait upon their wants although she had at her own home five small children; that during this time, and before the appellees moved into the Johnson home, Johnson and his wife both told these witnesses, in substance, that they were going to make a deed to the appellees and that they desired them to move in with them. The same witnesses testified that after the deed was made the grantor told them that the deed had been made. It thus appears from the evidence that prior to the time when it is alleged in the bill that a fiduciary relation became established between the appellees and the deceased the latter had declared his intention to deed land to them. Witnesses for appellees also testify that the deceased stated that he expected to make the deed to the appellee regardless of the fact that they might get their pay, evidently referring to the contract testified to by some witnesses, of five dollars per week for services. The evidence shows that at the time Cantrell made the deed he was called by Russel R. McGill; that upon the arrival at the home of Johnson he found him sitting in a chair in his room; that he went in and asked him what he wanted, and was told by the grantor that he desired him to make a deed conveying the forty acres of land in question to "Ancie and Russ," meaning the appellees; that the description of the land was secured from an abstract produced by Johnson; that the deed was read to him before his signature and that

he stated that that was what he wanted. The scrivener and the witnesses to the deed, Hicks and Oglesby, all testified that they considered Johnson mentally capable of transacting ordinary business at the time of the making of the deed and that he understood the nature and character of the transaction. They also testified that the appellees were both in the house when the deed was made but had nothing to do with the transaction further than indicated.

We are of the opinion that the greater weight of evidence concerning Johnson's mental condition shows that he understood the nature and character of the business that he was transacting and the effect that the instrument would have upon his property; that he knew of the claims that his other heirs had upon him, and that he acted of his own volition and directed the preparation of the deed without any interference. The findings of the chancellor, who heard and saw the witnesses, that the grantor was of sound mind at the time of the execution of the deed is in accordance with the weight of the evidence.

It is also urged by appellant that a fiduciary relation existed between Johnson and the appellees, and therefore the deed is *prima facie* void. The rule is, that even though a fiduciary relation exists, the deed is nevertheless valid if entered into with full knowledge of its nature and effect and through the deliberate and voluntary desire of the grantor. (*Pillsbury* v. *Bruns,* 301 Ill. 578; *Valbert* v. *Valbert,* 282 id. 415.) The existence of a fiduciary relation does not render a conveyance void unless by reason of the relation undue advantage is taken of the grantor. (*Lang* v. *Lang,* 284 Ill. 148.) Where a fiduciary relation exists, the burden of proof is on the beneficiary of the instrument executed during the existence of such relationship to show the fairness of the transaction and that it did not proceed from undue influence. (*Rutherford* v. *Schneider,* 307 Ill. 28; *Dowie* v. *Driscoll,* 203 id. 480; *Kern* v. *Beatty,* 267 id. 127; *Hensan* v. *Cooksey,* 237 id. 620.) A fiduciary rela-

tion is said to exist where confidence is reposed upon the one side and resulting superiority and influence on the other. In all cases where such influence has been acquired and abused, where confidence has been reposed and betrayed, a court of equity will set aside an instrument made through such undue influence, and the burden is upon one in whom such confidence has been reposed to show that any contract entered into by other parties is not against equity and good conscience. (*Herczeg* v. *Weiss,* 304 Ill. 543; *Dougherty* v. *Duckels,* 303 id. 490; *Campbell* v. *Freeman,* 296 id. 536; *Bordner* v. *Kelso,* 293 id. 175.) Where, however, the deed is a voluntary act of the grantor, with full knowledge of its nature and effect, and is in accordance with his expressed desire and purpose, the existence of a fiduciary relation between him and the grantee does not render the conveyance void. *Winkelman* v. *Winkelman,* 307 Ill. 249; *Pillsbury* v. *Bruns, supra; Roche* v. *Roche,* 286 Ill. 336.

In *Rutherford* v. *Schneider, supra,* this court held that mental incapacity to execute a deed is not to be inferred from old age or feeble health, and in *Dalbey* v. *Hayes,* 267 Ill. 521, it was held that the facts that the grantor was old and in feeble health and had hardening of the arteries and a poor memory do not justify setting aside his deed if the weight of the evidence sustains the finding of the chancellor that he was mentally competent to make it.

We are of the opinion that by far the greater weight of the evidence in this case establishes that the grantor was mentally capable of making the deed in question; that the presumption of undue influence, if any fiduciary relationship existed, is overcome by the evidence, which establishes that the making of the deed was in accord with his voluntary intention, formed even prior to the time when appellees came to live with him.

Appellant further contends that the court erred in permitting the appellees to testify in their own behalf; that they were not competent witnesses, and that without their

testimony the presumption of undue influence was not over-
come. The rule is, that where the ancestor executes and
delivers a deed to one of his children, and after the deed
a remaining child or children seek to set it aside, the chil-
dren not grantees, although heirs, may testify generally in
such proceeding, for the reason that the grantee in the deed,
although an heir of the ancestor, is a defendant as grantee.
(*Shipley* v. *Shipley,* 274 Ill. 506; *Mann* v. *Mann,* 270 id.
83; *Grindle* v. *Grindle,* 240 id. 143.) In such a case the
child who is grantee in the deed is not competent to testify
generally, for the reason that the complainants sue as heirs
of the deceased ancestor. (*Johnson* v. *Fulk,* 282 Ill. 328.)
Such grantee, however, may testify in rebuttal of evidence
concerning conversations given in evidence by the complain-
ants and may deny that he had such conversations. (*Vail*
v. *Rynearson,* 249 Ill. 501.) In this case appellee Ancie B.
McGill testified, over objection as to her competency, to
matters other than those coming within the exceptions to
the rule, and in that respect her testimony was incompetent
and its admission was error. The testimony of appellee
Russel R. McGill, however, appears in the main to have
been in relation to conversations testified to by complain-
ants. Aside from the testimony of appellees, however, we
are of the opinion that the record, by far the greater weight
of the evidence, sustains the finding of the chancellor. It
will be presumed, on appeal, that the chancellor considered
only competent evidence. (*Waggoner* v. *Clark,* 293 Ill.
256; *Drum* v. *Drum,* 251 id. 232.) The hearing was be-
fore the chancellor without a jury, and in such a case the
decree will not be reversed because of error in the admis-
sion of evidence if the competent evidence in the record
sustains the decree. *Shedd* v. *Seefeld,* 230 Ill. 118; *Fabrice*
v. *Von der Brelie,* 190 id. 460.

The decree of the circuit court will be affirmed.

*Decree affirmed.*