(No. 31727.—

NETTIE L. MASTERS *et al.,* Appellants, *vs.* ROBERT D. ELDER *et al.,* Appellees.

*Opinion filed November 27, 1950.*

CHARLES C. KIRK, and JOHN A. BROWN, both of Chicago, for appellants.

EDWARD G. BERGLUND and CHARLES B. ELDER, both of Chicago, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Nettie L. Masters, Frank B. Masters, and Anna Kathryn Masters, filed their complaint in the superior court of Cook County September 20, 1948, against Robert D. Elder and Esther S. Elder, praying that a quitclaim deed made November 19, 1932, by said plaintiffs to said defendants, as joint tenants, be set aside for fraud charged against defendant, Robert D. Elder, and that an accounting be had of all of the rents and profits from said property so conveyed, and that the same be applied in satisfaction of a certain mortgage existing prior to the delivery of said quitclaim deed, and for other relief. Frank B. Masters died before the case was terminated, and it continued in the names of the remaining plaintiffs.

An answer was filed denying all of the charges of fraud and breach of duty upon the part of the defendants, and a replication was filed thereto. The cause was referred to a master in chancery, who took the testimony and reported it to the court, and recommended that the complaint be dismissed for want of equity. Objections to the master's report were overruled, and exceptions filed to the report in the superior court. The superior court overruled the exceptions to the report, and entered a decree dismissing the

cause for want of equity, at the cost of the plaintiffs. Although ancillary relief is prayed, a freehold is involved, which gives us jurisdiction on direct appeal.

The complaint and answer are both extremely long, and replete with the use of the words "fraudulent" and "conspiracy," and like descriptions of defendants' actions, and attempt to describe the minutiae of transactions between the parties, some of them over twenty years old. The gravamen of the plaintiffs' complaint is that the defendant, Robert D. Elder, was an attorney at law, and the confidential adviser of Frank B. Masters, Nettie L. Masters and Anna Kathryn Masters as a family. It is alleged that this relationship commenced about the year 1920, and continued for thirteen years, but specifications contained in the complaint of the supposed relationship of attorney and client relate to not more than seven instances of office work, two of which, as pointed out later, cannot be designated as attorney's work for the plaintiffs, since they involve personal transactions between the plaintiffs and the defendant, Robert D. Elder.

In 1924, the plaintiffs undertook to construct an apartment building upon the lot in controversy, and to complete the construction thereof borrowed from the defendant, Robert D. Elder, the sum of $13,500, and, to secure the repayment of said loan, executed a trust deed to the Chicago Title & Trust Co., and the notes to Elder. The interest and capital payments upon this loan were duly paid until July, 1928, when it was necessary to refinance the loan, and a new loan of $15,000, secured in like manner, was procured from defendant, Robert D. Elder, and the old loan and trust deed securing the same canceled. During all of this time the title to the premises remained in Nettie L. Masters, but on July 21, 1932, Frank B. Masters and Nettie L. Masters conveyed said property to their daughter, Anna Kathryn Masters. At this time there was due upon the debt $450 interest, and also the taxes for the years

1929, 1930 and 1931, aggregating $1766.46. The Masters were advised by Elder that it was necessary that they do something about putting the loan in good standing, and especially that they pay up the back taxes, which were a lien upon the premises. The Masters were either unable or unwilling to do this, and a foreclosure suit was commenced by Esther S. Elder, the holder of the indebtedness.

Some negotiations followed between Elder and an attorney by the name of Smith, who purported to represent Frank B. Masters, Nettie L. Masters and Anna Kathryn Masters, that resulted in a settlement, a contract being prepared and signed November 26, 1932, by all parties to the suit, whereby it was agreed that the Masters would convey the property to Esther S. Elder, subject to the unpaid taxes, and that the principal indebtedness and the interest thereon be canceled, and that Masters be paid in addition the sum of $500, and retain a lease upon one of the apartments until March, 1933. This contract was signed, acknowledged before a notary public, and on the same day the quitclaim deed was executed for the premises by the plaintiffs, and both papers turned over to attorney Smith, who attended to the details of carrying out the contract by delivering the deed to Mrs. Elder, and disbursing the $500 that the Masters were to receive. The Elders went into possession of the premises shortly thereafter, and have remained in control continuously without interruption since that date, and without protest or complaint.

During the month of September, 1948, Elder received a letter from an attorney, enclosing a copy of a proposed complaint, which he declared he intended to file against Elder unless a settlement was made with the Masters. This proposed complaint related to the supposed fraud perpetrated upon his clients, growing out of the loan, foreclosure and settlement of said transaction. The complaint then concludes that, because of the fact that Robert D. Elder had acted as an attorney in some transactions relating to

examination of title to the property, a fiduciary relation was created, rendering the foreclosure and the settlement of the foreclosure suit voidable at the option of the holders of the property. The complaint makes no allegation that Elder was the attorney of Anna Kathryn Masters, other than the blanket claim that he was the attorney for the family of Nettie L. Masters.

The answer, with almost, if not greater detail, narrates the transactions between the parties, and asserts that the relation never was fiduciary; that Elder never performed more than ordinary office work; that the loan was made between the parties at arms length; that a foreclosure was necessary to protect the financial interests of the holder of the mortgage; that the plaintiffs were unable to pay, and were represented by an independent attorney who worked out a settlement, which was carried out by both parties, and that the parties had then rested for sixteen years from the time of the last transaction until bringing suit.

The evidence offered conforms to the general trend of the complaint, but instead of establishing the oft-repeated charges of fraud and conspiracy confirms substantially the following facts: That in November, 1921, Elder gave an opinion upon an abstract of title for Mrs. Masters; that in the early part of 1923 he gave Masters some advice upon the financing of a loan; that in August, 1923, he advised them as to the investment of the proceeds of the sale of another piece of property owned by them; and in March, 1924, examined the title, and gave an opinion thereon, for a certain lot purchased by the Masters; that in January, 1924, he also gave some advice with respect to the sale of a lot owned by one of the Masters; that in 1925 he advised Frank B. Masters and the family on the winding up and dissolution of a concern in which Frank B. Masters was a part owner. These are the principal transactions itemized, aside from a conference taking place in July, 1924, relative to the loan by Elder to Masters of the original $13,500,

and another conference in July, 1928, as to the details of increasing the loan from $13,500 to $15,000. These two transactions cannot properly be considered as coming within the commonly accepted term of the relationship of attorney and client, for the reason no charge appears to have been made for said transactions, and for the further reason it was a transaction between the parties as debtor and creditor, and not between them as attorney and client.

The facts further disclose, and it is so found by the master, that the property conveyed to the Elders in November, 1932, was worth from $12,500 to a maximum of $14,000, and that the value of the consideration given by said Elder to the Masters for the conveyance of said property, including the release of the indebtedness, the assumption of the unpaid taxes, and the payment of the additional money, amounted to approximately $18,650. Some testimony was introduced as to the cost of the building, when constructed in 1924 or 1925, as approximating $32,000 or $33,000, and that an offer of purchase had been made in the early part of 1929 for the sum of $25,000. This last evidence is not very convincing, since the offer was made before the bottom fell out of the market, and then was for several thousand dollars less than the property is said to have cost. The evidence given in the case occupies several hundred pages of testimony, much of it irrelevant, and it is interspersed with constant charges and countercharges between opposing counsel, all of which have no useful bearing upon the true issue in the case.

It is contended that these facts, which are substantially undenied, create a situation by which fraud is inferred and the burden is thrown upon Elder to show that the transaction was fair, and the former client not overreached. The plaintiffs contend that the actions of the defendant constituted fraud in the following respects: (1) That Elder took advantage and overreached the plaintiffs by an oppressive court action; *viz.,* bringing the foreclosure suit; (2)

that he deceived the plaintiffs by not disclosing to them that he was the true owner of the indebtedness instead of his wife; (3) that he did not advise them of the financial conditions of the country existing at the time; (4) that he failed to advise the separate attorney representing plaintiffs of how the loan might be extended, or renewed, or refinanced; (5) that he failed to have a receiver appointed, as could have been demanded by the terms of the trust deed; and, (6) that he failed to demand an assignment of the rents; and that by rushing tactics he had caused Frank B. Masters to induce the wife and daughter to sign the contract of settlement, and to sign the quitclaim deed, transferring the property in satisfaction of the mortgage.

No contention is made that the loan was not made, or that plaintiffs, Frank B. Masters and Nettie L. Masters, did not obtain the full amount of money secured by the mortgage, or that they had ever paid it, or that they were not in default at the time the foreclosure suit was filed. Some contention is made that the fiduciary relationship existed because at the time the suit was begun Elder, as an attorney, had filed objection to the application for judgment for taxes in the county court for the property involved which stood in the name of Nettie L. Masters. But, in connection with this fact, it should be remembered that it was as much to his personal interest as it was to that of the Masters to see that judgment was delayed as long as possible, because the taxes were prior to the mortgage, and it was quite apparent would eventually have to be paid by Elder.

We will not undertake to review all of the testimony, as that has been adequately done in the report of the master in chancery. However, a consideration of the record discloses the following facts, which do not seem to be in dispute: Robert D. Elder was an attorney at law, and in a period of some twelve or thirteen years had handled six or seven legal matters for Frank B. Masters or his wife.

These did not involve trust or confidence, but more the mechanical ability to determine from the public records the state of title. The loan he made was legitimate, and the fairness of the transaction unquestioned. He was not the attorney at any time of Anna Kathryn Masters, who owned the property at the time of the foreclosure. He was not the attorney of Nettie L. Masters at the time the suit was filed, because the only matter then unfinished was the tax objection matter, which was equally for their benefit as well as for his own. He did not take an oppressive or fraudulent action in bringing a foreclosure suit, as the mortgage was in default and the taxes were unpaid. He committed no fraud in bring the suit in the name of the holder of the note, since there was no denial of the validity, or existence of the debt. We have never considered it to be a part of the duty of a lawyer to volunteer advice on financial conditions or trends. We know of no authority that a lawyer commits fraud or deceit by failing to give advice to a former client on how to renew or refinance a loan, where his advice is not sought. Elder's failure to have a receiver appointed was due to the fact that the cause was settled before the court had acted, as the record shows beyond question the notice for the appointment of a receiver was served upon all of the parties. It is not fraud to fail to demand an assignment of rent, even though the provision was contained in the mortgage, since it was certainly not injurious to the plaintiffs for him to fail to do so. The evidence in this case shows that an independent lawyer advised the Masters in the transaction by which the foreclosure suit was settled, and although they deny knowing anything about it, the evidence shows beyond question that they signed the settlement contract; signed the deed; received the extra consideration, and used the apartment for the extra time permitted by the contract. The correspondence between Frank B. Masters and defendant Elder, at the time he mailed the contract and deed to Smith discloses

no animosity over the fact that it became necessary either for the mortgage to be foreclosed, or a conveyance made to settle the debt. And finally, the claim that a fraud was committed, and failure to advise Anna Kathryn Masters, or her mother, that they had an equity of redemption in the property is not chargeable to appellee, because (1) Anna Katheryn Masters had never been a client of Elder; and (2) because both Anna Kathryn and her mother had independent counsel at the time, who could have advised them, and, so far as the evidence discloses, may have done so.

The main fact upon which appellants hinge their entire case is that on a few occasions Elder performed simple office legal services for either Mr. or Mrs. Masters. While we have been favored by voluminous briefs by both appellants and appellees, the principles governing cases of this kind, where the alleged relation of attorney and client exists, are simple.

The relation of attorney and client is a confidential one which creates a fiduciary relation between the parties with respect to the matter in which the attorney is acting for the client. However, the relation of attorney and client does not forbid the parties from dealing with each other, and it has been held that a deed made by a grantor with full knowledge of its nature and effect, and because of the deliberate, voluntary and intelligent desire upon the part of the grantor, who happened to be a client, will not be set aside. (*Allen* v. *McGill,* 311 Ill. 170; *Winkelman* v. *Winkelman,* 307 Ill. 249; *Masterson* v. *Wall,* 365 Ill. 102.) It is also true that where a fiduciary relation exists, the burden of proof is on the grantee or beneficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, and that it was equitable and just and did not proceed from undue influence. *Suchy* v. *Hajicek,* 364 Ill. 502; *Allen* v. *McGill,* 311 Ill. 170.) This general principle applies to a contract

between an attorney and client made during the existence of such relation, and afterwards attacked by the client. (*Warner* v. *Flack,* 278 Ill. 303; *Willin* v. *Burdette,* 172 Ill. 117; *Ross* v. *Payson,* 160 Ill. 349; *Masterson* v. *Wall,* 365 Ill. 102; *Warford* v. *McQueen,* 375 Ill. 372.) However, an attorney is not prohibited from dealing with a client or buying his property or loaning him money. (*Herr* v. *Payson,* 157 Ill. 244; *Rolfe* v. *Rich,* 149 Ill. 436; *Masterson* v. *Wall,* 365 Ill. 102.) Assuming that the relation of attorney and client existed between appellants and appellee at the time the quitclaim deed given in satisfaction of the debt owing in this case was executed, it is clear that plaintiffs would not be entitled to maintain an action from that fact, alone, under the proof disclosed here. However, the attorney in the present case was not acting in a confidential or fiduciary capacity at the time he commenced the foreclosure suit and accepted the deed for the premises in satisfaction of the debt. The relation of attorney and client had not been of a continuous nature previously, but consisted of occasional and isolated transaction of the type narrated above, and not of a continuing character, such as an annual or other retainer. Certainly he was not acting as an adviser for them in any way when he demanded the payment of the loan, or, at least, the payment of the taxes on the property securing the loan.

The court takes judicial notice of conditions existing from 1929, and for several years thereafter, not only as to the value of the property, but the difficulty in financing it. It is no fault of appellees that general economic conditions in the country had caused a general depreciation of the value of all property, and the impairment of credit of practically everyone. Very likely, were the facts known, it was just as necessary for Elder to have funds for his personal use as it was for appellants to require money to keep their indebtedness in good standing. We think many

of the charges contained in the complaint are utterly unfounded, and the mere appellation of the words "fraudulent" or "conspiracy," for designating ordinary, simple transactions with the brand of fraud, does not supply the place of evidence when charges of fraud are made.

We are of the opinion that the trial court, and the master in chancery gave appellants the utmost consideration, and that the suit is one that after a lapse of sixteen years should never have been brought. We are, of course, familiar with the general principle that fraud stays the application of the doctrine of *laches,* but there is not the slightest indication of actual fraud by concealing from plaintiffs any facts which would induce them to refrain from action, and the fraud which might be implied from the former existence of a fiduciary relation is based upon such a slender foundation that any suit arising from such grounds should have been promptly commenced.

The rule applicable to the state of facts presented here is aptly set out in the case of *Stoke* v. *Wheeler,* 391 Ill. 429, where we said: "Stale claims are not encouraged in equity. (*Neagle* v. *McMullen,* 334 Ill. 168.) Although the general rule is that to charge a party with *laches* in the assertion of an alleged right it is essential that he should have had knowledge of the facts upon which he bases his claim, yet if the circumstances were such as to have put him upon inquiry and the means of ascertaining the truth were readily available had inquiry been made, the neglect or failure of the party to make such inquiry will charge him with *laches* the same as if he had known the facts. (*Neagle* v. *McMullen,* 334 Ill. 168; *Ater* v. *Smith,* 245 Ill. Ill. 57.) * * * The test is not what a party knows, but what he might have known by the use of information within his reach with the vigilance the law requires of him. (*Simpson* v. *Manson,* 345 Ill. 543.)" In that case the records of the probate court, had they been examined, would have

disclosed to the plaintiff all of the facts necessary to understand the claims made by the defendant. Here, the contract of settlement, letters, deed, and cancellation of the mortgage of record, and the presence of an independent attorney to advise them, furnished means of information which would require the plaintiffs in the instant case to act within apt time.

Not only have the plaintiffs failed to make out a case for equitable or other relief, but the action has become stale by the lapse of almost sixteen years time between the time when a settlement was made between the parties, and the original debt released, and the present action brought.

We have examined this long record carefully, and have read the briefs, which are unnecessarily long, and think the trial court reached the right conclusion. The issues were comparatively simple, the proof convincingly clear, and it is our view that the decree of the superior court of Cook County should be, and is, accordingly affirmed.

*Decree affirmed.*